NEPTUNE INSURANCE COMPANY, GARNISHEE, *vs.* FRANCIS S. MONTELL, ADMINISTRATOR OF GEORGE HUGHLER.—*December,* 1849.

The 3rd section of the act of 1834, ch. 79, providing that no transfer or assignment of any "lands, tenements, hereditaments, goods, or chattels, or credits," shall avail against an attachment, unless recorded before the issuing thereof, comprehends *choses in action.*

The act of 1847, ch. 107, repealing the said section of the act of 1834, cannot have the effect to give validity to unrecorded assignments made before the passage of such repealing act.

An instruction that there "are circumstances of suspicion relative to the fairness of certain papers offered by the defendant, which, if said papers were fairly executed, the defendant might explain; and, from the want of such explanatory evidence, the jury may find said papers were not fairly executed," was held erroneous, because it instructed the jury that they must believe the testimony relative to the circumstances of suspicion, and leaves them in ignorance of what those circumstances are.

A party cannot complain of the granting of an instruction by which he is not injured, even though it may be erroneous.

In cases of an equal division of the court, the jury are still to give a true verdict, and are precisely in the same situation in which they would have been if no instruction had been applied for on either side.

The usual practice in cases of an equal division of the court, is for each party to ask for instructions, and to except to the refusal to grant them, occasioned by the equal division.

Appeal from *Baltimore* county court.

This was a proceeding by attachment, on warrant instituted originally by the intestate of the appellee, on the 15th of Oc-

tober, 1840, to recover the sum of $3,177.20, alleged to be due him by *Moses J. Moses.*

The plaintiff, in his affidavit before the justice who issued the warrant, swears that a certain *Moses J. Moses,* not being a citizen of the State of *Maryland,* is justly and *bona fide* indebted unto him, the said *George Hughler,* in the sum of $3,177.20, over and above all discounts, and that the said *Moses J. Moses* is not a citizen of the State of *Maryland.*

The voucher produced was the record of a judgment recovered at *Nassau,* in the island of *New Providence,* one of the *Bahama* islands, on the 5th of May, 1840, by said *Hughler* against said *Moses,* for £621 0s. 10d. damages, and £40 16s. 6d. costs. The short note upon which the *capias* was issued, is as follows:

"*George Hughler against Moses J. Moses.* Action of *assumpsit* in Baltimore county court. This suit is instituted to recover the sum of $3,177.20, due and owing to the plaintiff, for money had and received by the defendant, to and for the use of said plaintiff, and for a like sum paid, laid out and expended by plaintiff for the defendant, and for a like sum by the plaintiff lent and advanced to the defendant, and for a like sum for goods sold and delivered by plaintiff to the defendant, and for a like sum due and owing by defendant to plaintiff, on an account stated."

The attachment was laid in the hands of the appellant, who appeared and pleaded *non assumpsit* and *nulla bona* of defendant, in its hands. Upon which pleas issues were joined.

The garnishee then moved to quash the attachment, because, in the short note filed with his attachment, the amount of the plaintiff's claim is not sufficiently set out in words and figures, at length or otherwise; and further, because, in the affidavit filed, upon which the attachment has issued, the claim is upon a record of the judgment alone, and in the short note the claim is stated to be in *assumpsit,* for money had and received, &c.; but the court (MAGRUDER and PURVIANCE, J.,) overruled this motion.

At the trial, the plaintiff offered in evidence the record filed

with the attachment, admitted to be considered as duly proved, and proved that, at the time said judgment was rendered, the value of a pound currency of the *Bahama* islands, was $4.80, and that plaintiff was a citizen of the *United States*, residing in *New York*.

The defendants then gave in evidence the following letters and assignments, the handwriting of the different parties to which were admitted to be genuine:

"*Charleston*, April 29th, 1840.
*Messrs. Clark and Kellogg, Baltimore:*

Gentlemen:—The enclosed I have had some time in my possession, and I now forward them to you. The order on the company, in your favor, you may as well lodge with them, and I should like you to accept the order in my favor, 'payable when in funds,' and return the same to me. It may be as well to say nothing to the underwriters about the transfer of the claim to me, and let the suit go on in the name commenced.

Your obedient servant,

L. J. Moses."

"The *Neptune Insurance Company, Baltimore, Maryland,* will please pay the amount of my claim against them, to *Messrs. Clark and Kellogg*, for the loss of the schooner *Meridian*, cargo, freight, &c.                    M. J. Moses.
Witness, Isaac J. Moses,
Nassau, N. P., November 25th, 1839."

"*Messrs. Clark and Kellogg*, *Baltimore:*

Gentlemen:—When received, please pay the amount you may receive from the *Neptune Insurance Company*, for my claim against them, for loss of the schooner *Meridian*, cargo, freight, &c., to *Mr. L. J. Moses*, or order, of *Charleston, S. C.*, which I transfer to him this day, for value received.

(Signed,)        M. J. Moses.
Witness, (Signed,) I. J. Moses,
Nassau, N. P., Nov. 25th, 1839."

"*Baltimore*, May 18th, 1840.—Payable when in funds.
(Signed,)        Clak and Kellogg."

And also offered in evidence two policies of insurance made by the *Neptune Insurance Company*, the garnishee in this case, insuring said *Clark and Kellogg*, on account of whom it may concern, the schooner *Meridian*, from *Nassau*, *N. P.*, to *Baltimore*, to the amount of $2,000, and freight to the amount of $500, and proved that the same were, by the *Messrs. Clark and Kellogg*, put into the hands of *John Glenn*, attorney at law, for adjustment, in April, 1840; that the losses intended to be covered by said policies, were disputed, and that suits were brought thereon, to the November term of the circuit court of the *United States*, for the *Maryland* district.

The defendants then moved the court to instruct the jury, that if they believed the evidence offered in this cause, the plaintiff is not entitled to recover, because:

1st. He has not, either in his affidavit or elsewhere, averred that the amount for which the judgment was rendered, is equivalent to the amount charged by him in his attachment, or equivalent to any other sum of money of the *United States*.

2nd. That he has not shewn that the court, before which the judgment, as is alleged, was rendered, had jurisdiction of the subject matter decided upon by said court.

3rd. That there is a variance between the short note filed, and the evidence adduced by the plaintiff.

4th. That the short note should have been drawn specially upon the judgment.

5th. That the record filed, does not correspond with the description thereof in the affidavit filed by plaintiff, upon which the attachment was issued.

6th. That if the jury believe the assignment, as given in evidence, was made and accepted at the time it dears date, then plaintiffs cannot recover.

All which prayers the court refused to grant, and the defendant excepted.

The jury rendered a verdict for the plaintiff, and assessed the damages at $3,633.62. The defendant then moved for a new trial, and arrest of judgment, because the verdict was rendered for a larger sum than claimed by the plaintiff, and because in-

terest was calculated upon the amount of the attachment; and, as an additional reason for a new trial, the garnishee states, that the only claim or debt due by the garnishee, is a debt upon which the said *Moses* had instituted suit in the circuit court of the *United States*, for the *Maryland* district, before this attachment was issued, and in which case judgment has been rendered against said garnishee. The court overruled this motion, and entered judgment of condemnation on the attachment, for said sum and costs.

The defendant appealed, and the Court of Appeals, at June term, 1844, reversed the judgment, and remanded the cause under a *procedendo.*

Under this writ the cause was again tried in the county court, in May, 1847. *Hughler* having died in the mean time, administration on his estate was granted to *Montell,* the appellee.

Before this second trial, the following amended short note was filed by the plaintiff:

"Action on the case. In *Baltimore* county court.—This suit is instituted to recover the sum of $3,177.20, due and owing by the defendant to the plaintiff, on a judgment recovered in an action of *assumpsit* by said plaintiff, *George Hughler,* against said defendant, in the general court at *Nassau,* in the island of *New Providence,* one of the *Bahama* islands, on the 5th day of May, 1840, at Easter term of said court, and also to recover a like sum promised by said defendant to be paid to said *Hughler,* as being due to him by said *Moses,* in and upon said judgment, and also to recover a like sum of $3,177.20, due and owing by said defendant, *Moses,* to the said plaintiff, on a judgment recovered in an action of *assumpsit* by said plaintiff, *Hughler,* against said *Moses,* in the general court of the *Bahama* islands, at *Nassau,* in the island of *New Providence,* one of said *Bahama* islands, on the 5th day of May, 1840, at Easter term of said court, and for a like sum promised by said defendant to be paid to said *Hughler,* as being due to him by said defendant, in and upon said last named judgment."

The pleas and issues were same as in former trial.

At the trial, the plaintiff offered the same evidence as at the

preceding trial, and also that it is admitted that the garnishees had, at the time of laying said attachment in their hands, and now have, sufficient funds to cover the plaintiff's claim, provided it is established.

The defendant then gave the same evidence as before, and, in addition, the following letters, the handwriting of the different parties to which was admitted:

Charleston, Oct. 3rd, 1840.

John Glenn, Esq., Attorney at Law, Baltimore:—

Dear Sir:—I shall be pleased to have you inform me when the case of M. J. Moses against the Neptune Insurance Company, will come on in the United States court, and request you will get ready any commissions you require to be sent to Nassau, and send them to Messrs. R. W. Brown and Sons, Wilmington, N. C., to be forwarded to Mr. Anderson, attorney general at Nassau, N. P., by first vessel, as a vessel will be dispatched from Wilmington for Nassau, in the course of ten or twelve days, therefore it will be necessary to get your papers ready immediately, to be dispatched by that vessel, in the event of there being no opportunity at Baltimore to send them direct to Nassau. I shall be in Baltimore at the time of the trial coming on, and shall be prepared to arrange with you for conducting this suit. Please state whether any papers, beside what you or Messrs. Clark and Kellogg have, be necessary, so that I can obtain them. The captain of the Meridian lives at Nassau. Very respectfully, your ob't serv't,

L. J. Moses,<br>At South-western Railroad Bank,<br>Charleston, S. C.

An early reply is solicited.—L. J. M.

Charleston, 15-18 May, 1840.

Gentlemen:—I addressed you, on the 29th ulto., and enclosed an important document, without receiving any acknowledgment from you. Please inform me whether such letter,

with its enclosure, has ever reached you.    Your immediate attention will much oblige your obedient servant,

L. J. Moses,

At the *South-western Railroad Bank.*

To Messrs. Clark and Kellogg,

*Baltimore, Md.*

*Baltimore,* May 18th, 1840.

*Mr. L. J. Moses, Esq., Charleston:*

Dear Sir:—We received, some time since, your's of 29th of April, and to-day we have your letter of 18th inst.    Our attorney, *Mr. Glenn,* has been too unwell to attend to business, and, therefore, no progress has been made in your case.    We annex a copy of a note which he received from the underwriters, by which you will perceive they withdraw all offers of compromise.    They seemed disposed to contest every inch of ground, and, we think it probable, will endeavor to show, among other things, that the vessel was unseaworthy, from want of sufficient equipment, or of a properly qualified crew. As soon as we shall have seen *Mr. Glenn,* we will write you further.    We think you should endeavor to get possession of the bals. left at *Nassau.*    We enclose our acceptance of *Mr. M. J. Moses'* order on us, payable when in funds.

Your obedient servants,

Clark and Kellogg.

Evidence was also offered in relation to the *bona fides* of the transfer of his claim against the garnishees, by *M. J. Moses* to *L. J. Moses,* of the 25th of November, 1839, and of other matters which it is unnecessary to state.

The plaintiff then further gave in evidence three short copies of the judgments in the suits on said policies of insurance in the circuit court of the *United States,* and orders to enter the same for the use of *L. J. Moses,* dated September, 1842. And proved, that in 1839, and 1840, it took from three to four days for the mail to come from *Charleston, S. C.,* to *Baltimore,* and that the voyage from *Nassau.* to said *Charleston,* was usually made in four, five or six days, and that from *Nassau*

to *Baltimore*, was usually from eight to ten days. Whereupon, the plaintiff submitted the following prayers:

1st. That the orders offered in evidence, of the 26th November, 1839, not having been recorded before the issuing of the attachment in this case, are no bar thereto, under the act of *Maryland*, of 1834, ch. 79, sec. 3.

2nd. That even if the said orders are not a bar, for the reason stated in the 1st prayer, they are not, unless the jury find that they were given *bona fide*, and for a valuable consideration.

3rd. That the said papers, of the 25th November, 1839, did not transfer the funds attached, at the time the attachment was laid, independent of the act aforesaid, and independent of the *bona fides* of such papers.

And the defendant submitted the following prayer:

That if they find the transfer offered in evidence by the defendant, to have been executed by *Moses J. Moses*, it is *prima facie* fair, and to invalidate it, it is incumbent on the plaintiff to satisfy the jury, from the evidence in the cause, that it was fraudulently made.

The plaintiff then offered his 4th prayer:

4th. If the jury find, from the evidence of the defendant, that there are circumstances of suspicion in relation to the fairness of the papers of the 25th November, 1839, which, if the said papers were fairly executed, the defendant might explain, that then, for the want of such explanatory evidence, the jury may find that said papers were not fairly executed, notwithstanding the prayer of defendant.

And the court (ARCHER, C. J., and LE GRAND, A. J.,) granted the 2nd and 4th prayers of the plaintiff, and the prayer of the defendant, and rejected the 3rd prayer of the plaintiff, and, being divided in opinion on the 1st prayer of the plaintiff, refused to give the instruction as therein prayed for.

To the granting of which 2nd and 4th prayers of the plaintiff, the defendant excepted; and to the refusal of his 1st and 3rd prayers the plaintiff excepted.

After the instructions in the aforegoing exception were given

by the court, and the plaintiff's counsel had addressed to the jury the opening speech on the evidence, the counsel for the defendant, in addressing the jury, asserted and insisted, that the refusal by the court to grant the plaintiff's said first prayer, amounted to an instruction in this case, that the act of 1834, ch. 79, referred to in said prayer, did not apply to this case. Whereupon he was interrupted by the counsel of the plaintiff, who denied that such was the legal effect of said refusal. Whereupon the defendant's counsel offered to the court the three following prayers:

1st. If the jury find, from the evidence, that the transfer offered by the defendant was executed by *Moses J. Moses* to *L. J. Moses, bona fide,* and for a fair and valuable consideration, that the same is not covered by the provisions of the act of 1834, ch. 79.

2nd. And even if within the provisions of the said act, that the same having been repealed, said transfer is valid and good.

3rd. That the court having divided on the first of the plaintiff's prayers, and on the defendant's first prayer, and exceptions thereto having been taken by both plaintiff and defendant, the question therein stated, and thereby presented, is withdrawn from the consideration of the jury.

Which second and third prayers the court rejected, and being divided in opinion on the first, refused to give the instruction therein prayed for; to which refusal to grant said prayers, the defendants excepted, and the verdict and judgment being against them, they appealed to this court.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MAGRUDER, MARTIN, and FRICK, J.

By GLENN and NELSON, for the appellants, and
By R. JOHNSON and JOHN J. LLOYD, for the appellee.

The points made in argument were the same as the propositions contained in the prayers offered by the respective parties.

The 3rd sec. of the act of 1834, ch. 79, repealed by the act of 1847, ch. 107, is as follows:

OF MARYLAND. 237

Neptune Ins. Co., Garnishee, *vs.* Montell, Adm'r of Hughler.—1849.

"*And be it enacted*, that where any attachment, as aforesaid, shall hereafter be levied or laid upon any lands, tenements, hereditaments, goods, or chattels, or credits, of a non-resident defendant or defendants, no conveyance, transfer or assignment of any such lands, tenements, hereditaments, goods, or chattels, or credits, shall have any effect against such attachment, unless the same shall have been recorded in the office of the clerk of the county in which such attachment shall have issued, before the time of such issuing."

MAGRUDER, J., delivered the opinion of this court.

In this case an attachment was laid by a creditor of the defendant, in the hands of a person who certainly had been indebted to the defendant. It is said that the defendant, previously to the issuing of this attachment, had transferred this claim to another person. There is, however, no proof of any such assignment or transfer being recorded.

The only question is, whether the terms used in the act of 1834, comprehend *choses in action?* This question, we think, was decided by this court in a case on the *Eastern Shore*, (*Massey vs. Hesson and Hanlan*,) decided June term, 1845. The garnishee was indebted to the defendant on an award which the latter had assigned previously to the attachment being issued, but the assignment was not recorded, and because it was not recorded, the court decided, that the claim could be attached. We think, therefore, that the court below ought to have decided this question in favor of the plaintiff there.

We think that the court below erred in saying to the jury, "that there are *circumstances of suspicion* in relation to the fairness of the papers offered by the defendant, of 25th November, 1839, which, if the said papers were fairly executed, the defendant might explain, and for the want of such explanatory evidence, the jury may find the said papers were not fairly executed." This seems to instruct the jury, that they must believe the testimony relative to the circumstances of suspicion, and leaves them in ignorance of what are those suspicious circumstances.

The decision of this court, however, upon the former point, renders this instruction of no importance. The appellant cannot complain of it, because, by it, he was not injured. When it is settled that the assignment, whether *bona fide* or not, is of no effect in the trial of the issue, it is immaterial whether it was fairly executed or not.

Upon the first question, relative to the validity of the transfer, or the necessity of recording it, the court below was equally divided, and the effect of such equal division is to be ascertained.

The defendant contended, that the question was withdrawn from the consideration of the jury. If so, how were the jury to render a verdict? What disposition was to be made of the case? In the *United States'* courts, when an equal division takes place, the trial stops until the opinion of the Supreme Court can be had. But we have no such provision in *Maryland.* The jury are still to give a true verdict, and are precisely in the situation in which they would have been, if the counsel on both sides had declined applying to the court for any instruction.

The usual course in some of the courts of *Maryland,* is for the party who asks the instruction, which is refused, to take his exception, and then the other party may ask the court to instruct the jury that the law is otherwise than as suggested by his adversary. The equal division of the court gives to him an opportunity, also, of taking an exception, and of obtaining a reversal of the judgment, if the court erred, and he was injured by their error in refusing to give his instruction. In the case of *Smith vs. Gilmor, 4 H. & J.,* 177, either party, without a second prayer, may except. See 4 *Gill,* 209.

This court has already decided, in the case of *Massey,* before alluded to, and, indeed, in other cases, that the repeal of the act of 1834, had not the effect of giving validity to assignments of this description, before its repeal.

JUDGMENT AFFIRMED.

DORSEY, C. J., dissented.