Cockey *vs.* Milne's lessee.

*Judgment affirmed.*

(Decided June 21st, 1860.)

## EDWARD COCKEY *vs.* GEORGE MILNE'S lessee.

An attachment on warrant, under the Act of 1795, ch. 56, against the property of a non-resident or absconding debtor, may be issued upon a transcript of a judgment rendered in another State.

In a proceeding *in rem.*, by attachment laid on land, the lien of the judgment of condemnation is a *specific lien* on the property condemned, which *relates back* to the time when the attachment was laid, and ripens into a perfect legal title in the purchaser under the execution.

The registration of a deed, defectively acknowledged, is not constructive notice to a subsequent *bona fide* purchaser, and cannot affect him without actual notice.

The want of the affidavit to a mortgage, as required by the Act of 1846, ch. 271, is fatal to the validity of the mortgage, whether it be assailed by a creditor or a subsequent *bona fide* purchaser.

The Act of 1846, ch. 271, avoids the instrument as to all persons except the grantor, and was designed not merely to prevent fraud, but for the benefit of creditors who may claim against such an instrument as void in law under the Act, no matter how the question of actual fraud may stand.

Cockey vs. Milne's lessee.

The right and title of a person who was not a party to proceedings in equity, for the sale of land, are not, in any manner, bound or affected thereby.

APPEAL from the Superior Court of Baltimore City.

*Ejectment*, brought on the 20th of November 1855, by the appellee against the appellant, to recover a lot of ground in the city of Baltimore. Plea, *non cul*.

*Exception.* The titles under which the parties respectively claim, are fully stated in the opinion of this court. The mortgage from Sinclair to Forster of the 15th of November 1851, was executed by the grantor, residing in the city of Brooklyn, State of New York, and was acknowledged before a commissioner of deeds for the city and county of New York, but it is not stated or certified that he was a commissioner of deeds for the State of Maryland, and there is no affidavit by the mortgagee of the *bona fides* of the consideration stated in the mortgage. The plaintiff asked an instruction that if the jury find from the evidence that the title to the property in question was out of the State, and that John Sinclair had the title to the same on the 1st of January 1851, and that the title continued in the same state, except as affected by the attachment and proceedings thereunder, in the case of *George Milne vs. John Sinclair*, and the sheriff's deed, offered in evidence by the plaintiff, and by the alleged mortgage from Sinclair to Forster, and the assignment from Forster to Hasbrouck, and the bill in equity and the proceedings thereunder, in the case of *Hasbrouck vs. Sinclair, and others*, offered in evidence by the defendant, and that the property is the same property mentioned in the said attachment proceedings, and said chancery proceedings, and in the deed from John Hayes, sheriff, also offered in evidence by the plaintiff, then the plaintiff is entitled to recover in this case.

The court (LEE, J.) granted this prayer, and to this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLES-TON, TUCK and BARTOL, J.

26     v.16

Cockey *vs.* Milne's lessee.

*John Stewart* and *S. T. Wallis,* for the appellant, argued:

1st. That the attachment improperly issued, inasmuch as the Act of 1795, ch. 56, sec. 1, among the causes of action therein enumerated, upon which an attachment may issue against the property of a non-resident, does not include *judgments.* Now the attachment here was upon the *transcript* of a record of a judgment of the Superior court of New York. Is this such an *instrument* as will authorize an attachment to issue upon? The principle is well settled, that our attachment laws are to be *strictly* construed. 8 *Md. Rep.,* 444, *Brown vs. Somerville..* Every requirement of the law must be strictly complied with. There must be a short note accompanying every attachment, simply because the law requires it to be done, and in every other particular the directions of the law must be strictly followed, or otherwise the attachment falls. 5 *H. & J.,* 130, *Shivers vs. Wilson.* 6 *H. & J.,* 446, *Yerby vs. Lackland. Ibid.,* 497, *Mandeville vs. Jarrett.* 12 *G. & J.,* 53, *Dawson vs. Brown.* 3 *Gill,* 313, *Barr vs. Perry. Drake on Attachments, sec.* 87. In view of these authorities thus strictly construing these laws, it would be departing from the principle they desire to hold, that a *transcript* of a *judgment* of the court of another State is an *instrument* on which the party is indebted. When the Legislature designed to embrace judgments in their legislation upon this subject, they have used the word *"judgment,"* as in the Acts of 1715, ch. 23, sec. 6, and 1715, ch. 40, sec. 7, and 1834, ch. 189, where special provisions are made for the case of judgments, and attachments thereon. It is not to be presumed that such special legislation would have been adopted, if a *judgment* was an instrument upon which an attachment could issue under the Act of 1795. 8 *Gill,* 192, *Wilson vs. Wilson.*

2nd. That the appellee who purchased the property in dispute, on the 10th of June 1853, took only the interest of the execution debtor, subject to all its equities, and that Sinclair, the execution debtor, ceased to have any interest in the same on the 20th of December 1852, the date of the sale by the

trustee, in the case of *Hasbrouck vs. Sinclair & others,* in the Superior court of Baltimore city, and had only the equity of redemption, from and after the 15th of November 1851, the date of the mortgage to Forster. The judgment was after, and the appellee, therefore, became a creditor subsequently to, the date of the mortgage. Though the mortgage was defectively acknowledged, yet the chancellor would have ordered it to be recorded under the Act of 1785, ch. 72, so as to bind the appellee. This same policy is carried out by the Act of 1825, ch. 203, sec. 1. An equitable assignment, *bona fide* made prior to the attachment, will overcome the legal right of the attaching creditor. 5 *Gill,* 180, *Alexander vs. Ghiselin.* 1 *Strob. Eq. Rep.,* 103, *Williams vs. Hollingsworth.* Why should not the same principle apply to cases of attachment of realty? In support of the positions assumed under this point, see 5 *H. & J.,* 225, *Boring vs. Lemmon;* 6 *H. & J.,* 204, *Barney vs. Patterson;* 6 *Md. Rep.,* 201, *Stump vs. Henry;* 7 *Md. Rep.,* 368, *Martin vs. Martin;* 3 *H. & McH.,* 594, *Davidson vs. Beatty;* 2 *Richardson's Eq. Rep.,* 179, *Bank of South Carolina vs. Campbell;* 2 *Bay,* 85, *Ashe vs. Livingston; Drake on Attachments,* secs. 603, 604; 10 *G. & J.,* 420, *Jones vs. Hardesty;* 4 *Md. Rep.,* 242, *Winchester & Lemmon vs. Balto. & Susq. Rail Road Co.*

*Geo. W. Dobbin,* for the appellee, argued:

1st. That the mortgage from Sinclair to Forster, not having any affidavit of the *bona fides* of the consideration, according to the laws of Maryland, could pass no title to the property except as against the mortgagor, and not having been acknowledged according to the laws of Maryland, the recording thereof was not notice to any one. *Act of* 1846, *ch.* 271. 8 *Gill,* 237, *Neptune Ins. Co. vs. Montell.* 1 *Md. Rep.,* 469, *Waters vs. Dashiell.* 3 *Md. Rep.,* 82, *Charles vs. Clagett.* 13 *Md. Rep.,* 392, *Fouke vs. Flemming.* The want of the affidavit is fatal to the mortgage under the Act of 1846, ch. 271. This Act was designed not only to prevent fraud, but also to protect creditors. The Statute of 13*th*

*Eliz.*, contains a clause making the deed good as against the grantor, yet a creditor could levy on the property notwithstanding such a deed.

2nd. That the proceeding in chancery, instituted by Hasbrouck, as assignee of Forster's mortgage, did not improve the title, except as to Sinclair and Forster, and Milne, the attaching creditor, not being a party to it is not affected thereby. 12 *G. & J.*, 318, *Brooks vs. Brooke.* 1 *Md. Ch. Dec.*, 236, *Duvall vs. Speed.*

3rd. That Milne, by his attachment laid on the 7th of April 1852, and by the judgment of condemnation of the 10th of May 1852, acquired a lien on the property in question, which was ripened into a perfect legal title in him by his purchase at the sheriff's sale, on the 10th of June 1853, and no act of Sinclair, or his alienee, after the attachment, could lessen or impair the security of the attaching creditor. 7 *Md. Rep.*, 377, *Martin vs. Martin.* 3 *Gill*, 325, *Barr vs. Perry.* 7 *G. & J.*, 429, *Farmers Bank of Delaware vs. Beaston.*

4th. That the attachment properly issued on the foreign judgment. The Act of 1795, ch. 56, sec. 1, authorizes an attachment on warrant to be issued against a non-resident, or absconding debtor, upon certain enumerated vouchers, and "any instrument, or instruments, of writing, by which the debtor is so indebted." This language is comprehensive enough to include a foreign judgment, and the Act has always been construed in that way. 8 *Gill*, 228, *Neptune Ins. Co. vs. Montell.*

BARTOL, J., delivered the opinion of this court:

This is an action of ejectment, instituted by the appellee against the appellant. It is admitted that John Sinclair was seized in fee of the land in controversy, on the 1st of July 1851, and continued so seized, except as affected by the proceedings under which the parties to this suit respectively claim title.

George Milne, (the plaintiff's lessor,) on the 17th of April 1852, issued an attachment out of the Superior court of Baltimore city, against John Sinclair, upon a transcript of a record

of a judgment, recovered by him against Sinclair in the Superior court of the city of New York. The attachment was laid upon the property in question on the same day. Judgment of condemnation was entered on the 10th of May 1852. A writ of *fieri facias* was issued thereon on the 11th of May 1853, and levied upon the same property, which was sold by the sheriff, and bought by Milne (the plaintiff in the attachment) on the 10th of June 1853, on the 3rd of June 1854, the sheriff conveyed the property to Milne, by deed duly executed, acknowledged and recorded, and upon this title the action was instituted.

Two grounds of defence were taken by the appellant:

1st. That the attachment improperly issued; because the Act of 1795, ch. 56, does not authorise an attachment against the property of a non-resident, to be issued upon a transcript of a judgment rendered in another State.

2nd. That the title acquired by the appellee (if any) under the proceedings in attachment and the purchase from the sheriff, is subject to the superior title acquired by the defendant under the mortgage from John Sinclair, the decree in equity of the 23rd of November 1852, and the sale thereunder, made on the 29th of December 1852.

Both these points were ruled against the defendant by the court below, and an instruction granted to the jury in accordance with such ruling, which is brought before us for review on this appeal.

In the opinion of this court, the decision below was correct, and ought to be affirmed.

The Act of 1795, ch. 56, sec. 1, gives the remedy by attachment to any citizen of this State or any other of the United States, for the recovery of any debt due him by a non-resident or absconding debtor. In order to obtain the warrant for an attachment, it is necessary for the creditor to produce a voucher of his claim, and the Act, in the enumeration of the vouchers which may be produced, includes, in general terms, *"any instrument or instruments of writing by which* the debtor is *so indebted."* This language clearly embraces such a voucher as the transcript of a record of a judgment from another State. It is not only within the general scope and

purpose of the law, but within its very letter. What is a transcript of record but an instrument of writing evidencing the debt; an instrument of the highest and most solemn character, the verity of which cannot be impeached, or its binding force denied, except by showing that the court, from which the record comes, has exceeded its jurisdiction. This is the first time such an objection has been made since the passage of the Act of 1795, so far as we are aware; although debts on foreign judgments have been enforced by proceedings under that Act. In *The Neptune Ins. Co. garnishee, vs. Montell, adm'r of Hughler,* 8 *Gill,* 228, the voucher produced was the record of a judgment recovered at Nassau, in the Island of New Providence, and the attachment was sustained.

The ground of the second objection, as stated by the appellant, is as follows: "That the appellee, who purchased the property in dispute, on the 10th of June 1853, took only the interest of the execution debtor, subject to all its equities, and that John Sinclair, the execution debtor, ceased to have any interest in the same on the 20th of December 1852, the date of the sale by the trustee in the case of *Hasbrouck vs. Sinclair and others,* and had only the equity of redemption from and after November 15th, 1851, the date of the mortgage to Forster."

In support of this position, several authorities have been cited in argument, all of which have been carefully examined. But it is unnecessary particularly to notice them, as we consider them inapplicable to the present case. Whatever may be the rights acquired by a purchaser, under an execution issued upon a general judgment, in this case, where the proceeding was *in rem.* by attachment, and the judgment one of condemnation of the particular property, we are clearly of opinion that the lien of the judgment was a specific lien upon the property condemned, which related back to the time when the attachment was laid, and ripened into a perfect legal title in the plaintiff, by the purchase under the execution. 7 *G. & J.,* 429. 3 *Gill,* 325. 7 *Md. Rep.,* 377. In opposition to this title, the defendant claims under the mort-

gage executed by Sinclair to Forster, on the 15th of November 1851. That instrument was defective in two particulars. It was not acknowledged according to law, nor did it contain any affidavit of the *bona fides* of the consideration, as required by the Act of 1846, ch. 271.

The law is well settled in this State that the registration of a deed defectively acknowledged, is not constructive notice to a subsequent *bona fide* purchaser, and cannot affect him without actual notice. 1 *Md. Rep.*, 403. 5 *Md. Rep.*, 81. It is unnecessary for us, in this case, to decide whether a party claiming under an attachment levied upon the property, is entitled to the same protection as a *bona fide* purchaser against a prior deed defectively executed; because we consider that the want of the affidavit, under the Act of 1846, is fatal to the validity of the mortgage from Sinclair to Forster, whether it be assailed by a creditor or a subsequent *bona fide* purchaser. The Act of 1846 avoids the instrument as to all persons except the grantor. In our opinion, it was designed not merely for the prevention of fraud, but for, the benefit of creditors, who may claim against such an instrument as void in law, under the Act, however the question of actual fraud may stand. This point has not before been directly decided; but we can give no other construction to the language of the Act of Assembly, and whenever this court has been heretofore called on to construe it, we have so understood its operation, without expressly so deciding. See *Charles vs. Clagett,* 3 *Md. Rep.*, 82. *Fouke vs. Fleming & Douglass,* 13 *Md. Rep.*, 392. See also *Waters vs. Dashiell,* 1 *Md. Rep.*, 455.

In the judgment of this court, the title of the appellee, acquired under the proceedings in attachment, was good against any title asserted under the mortgage, and was in no manner affected by the proceedings in chancery, instituted by Hasbrouck, the assignee of Forster, against Sinclair, under which the appellant's title was acquired. The appellee was not a party to those proceedings and his right was not, in any manner, bound or affected thereby.

*Brooks vs. Brooke and others,* 12 *G. & J.*, 318. *Duvall vs. Speed,* 1 *Md. Ch. Dec.*, 236.

*Judgment affirmed.*

(Decided June 28th, 1860.)