D. WEBSTER GROH et al. *v.* JAMES R. COHEN et al.
[No. 17, January Term, 1930.]

*Decided March 12th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Allan H. Fisher,* for the appellants.

*Robert H. McCauley, Levin Stonebraker, Leo H. Miller, Brindle & Brindle,* and *Oswald & Oswald,* submitting on brief, for the appellees.

Urner, J., delivered the opinion of the Court.

The decree under review on this appeal invalidated, except as between the parties, two mortgages which the bill of complaint alleged to be inoperative as against the plaintiffs, to whom the owner of the mortgaged property is indebted on a judgment and mechanics' lien claims. The judgment was in existence prior to the acquisiton of the property by the defendant owner and the execution of the mortgages in controversy, while the mechanics' lien claims are for materials and labor subsequently used in the erection of buildings on the mortgaged land. In order to obviate the judgment lien, the purchaser and present owner of the land, Harvey C. Wills, who is a building contractor, caused the title to be conveyed to one of his employees, Roy C. Karn, who, with his wife, executed the mortgages, one to D. Webster Groh, for $8,000, and the other to Garland E. Groh for $1,000, securing loans to provide for the payment of the purchase price and for the improvement of the property. Immediately following the execution of the mortgages, on October 14th, 1927, Karn and wife conveyed the equity of redemption to Wills by a deed in which the latter assumed the two mortgage debts. The lots were purchased from the Farmers & Merchants Bank, of Hagerstown, and its deed to Karn, the nominal purchaser, bore the same date as the mortgages and the deed

from Karn and wife to Wills, but the bank's deed was not delivered until some time between that date and October 20th, 1927, when it and the mortgages were recorded. The deed from Karn and wife to Wills was filed for recording on October 24th. Between the last mentioned dates the construction of the buildings on the lots was commenced.

Contemporaneously with the execution of the mortgages, Karn filed a paper reciting that the proceeds of the mortgage loans, amounting to $9,000, had been paid to the Groh Realty Company, in trust to be applied as the building work progressed, and authorizing the company to pay out of the funds $2,400 as the purchase price of the lots, $270 to Garland E. Groh as a fee for searching the title and procuring the loans, and the balance to Harvey C. Wills, or to material and labor claimants on his order, in stated amounts at specified stages of the work. For the amount of the first mortgage loan three checks, one for $2,000 and two for $3,000 each, were drawn by the mortgagee to the order of the Groh Realty Company, of which Garland E. Groh was virtually the sole proprietor. His own check for the loan of $1,000 on the second mortgage was similarly drawn. That check and the one for $2,000 given by his father, the first mortgagee, were deposited in bank on October 20th, but one of the $3,000 checks was not so used until November 30th, and the other for that amount has never been deposited. The three checks representing the first mortgage loan were drawn against the mortgagee's interest account in the Farmers and Merchants Bank. The work on the houses, in the course of erection on the mortgaged land, was discontinued by the owner when the buildings were far from completion, because he had not sufficient money and material and he had exhausted the payments then due from the mortgage loan funds, according to the terms of the agreement under which they were to be applied. At that time $1,697.30 had been paid out of the loan funds for material and labor costs, in addition to the purchase price and fee heretofore mentioned. There are unpaid mechanics lien claims aggregating $4,775.40. The Groh Realty Company still has in its possession $1,622.70 of the money received

from the loans, and holds the unused $3,000 check of the first mortgagee.

It is an undisputed fact in the case that the participation of Karn and wife as grantees and mortgagors of the property involved in this suit subjected them to no intended liability. They were wholly ignorant of the nature and purpose of the papers which they signed, and they did not even transiently receive any part of the loans which the mortgages were designed to secure. This was clearly understood by the mortgagees, one of whom, acting for his individual interest and as son and agent of the other, planned the transaction and conducted it in the manner described. While there was consequently no pretense that Karn and wife actually incurred any of the indebtedness recited in the mortgages for the purchase and improvement of the property which they immediately conveyed to Wills, yet the mortgagees made affidavits, in the statutory form, that the considerations stated in their respective mortgages were true and *bona fide* as therein set forth. The statement thus made in the affidavits being fictitious, it is just as ineffective as if it had been omitted. The Code provision (article 21, section 33) that no mortgage "shall be valid except as between the parties thereto, unless there be endorsed thereon an oath or affirmation of the mortgagee that the consideration in said mortgage is true and *bona fide* as therein set forth," cannot be satisfied by an affidavit which is not true in fact. The considerations stated in the mortgages in question purported to be loans to the persons signing the instruments as mortgagors, when in truth no such loans were ever made or contemplated. If the title had been conveyed primarily to the real purchaser, and he had executed the mortgages which in terms secured loans for the payment of the purchase price and the cost of improvements, the mortgagees would have been fully protected from the liens of any pre-existing judgments against the mortgagor. (Code, art. 66, sec. 4.) But such a purpose does not justify or validate the use of affidavits which are illusory.

In the case of *Ressmeyer v. Norwood,* 117 Md. 320, the

contested mortgage recited as its consideration an indebtedness of $6,657 from the mortgagor to his wife, the mortgagee, while it was proved that the mortgage was not executed to secure an indebtedness to the mortgagee, but for the purpose of being assigned as security for debts owing by the mortgagor to other persons for a total amount equal to that which the mortgage specified. It was held that, apart from any question of actual fraud, the mortgage was void as against the liens of attachments levied on the mortgaged land, because the consideration in the mortgage was not true and *bona fide* as therein set forth, although so characterized in the accompanying affidavit. In support of that conclusion the court cited the cases of *Denton v. Griffith,* 17 Md. 301; *Cockey v. Milne,* 16 Md. 200; *Nelson v. Hagerstown Bank,* 27 Md. 51; *Marlow v. McCubbin,* 40 Md. 132.

In *Govane Building Co. v. Sun Mortgage Co.,* 156 Md. 401, it was held that an affidavit as to the consideration in a mortgage was not false because of the difference, representing a bonus, between the covenanted mortgage debt and the sum actually loaned, or because the debt was owing to the principal of an agent in whose name the mortgage was taken by proper authority. There was in that case a real liability on the part of the mortgagor to pay the stipulated debt to a mortgagee who was duly empowered to act in that capacity for the lender. In the present case the actual considerations for the mortgages were not loans to the mortgagors as indicated by their recitals which the affidavits purported to verify, but to a borrower who was not a party to their execution, and the ostensible mortgagors were concededly exempt from any liability and devoid of knowledge as to the tenor and effect of the instruments.

Another serious objection to the validity of the first mortgage is that it was utilized as a means of securing future advances, although it was not in conformity with the statutory requirements for mortgages serving such a purpose. It is provided by secction 2 of article 66 of the Code that "no mortgage or deed in the nature of a mortgage shall be a lien or charge for any sum or sums of money to be loaned or ad-

vanced after the same is executed, except from the time said loan or advance shall be actually made; and no mortgage to secure future loans or advances · shall be valid unless the amount or amounts of the same and the times when they are to be made shall be specifically stated in said mortgage." In *Baltimore High Grade Brick Co. v. Amos,* 95 Md. 571, a mortgage which stated a present indebtedness of a specified amount maturing in one year, but in fact designed to secure future advancements of money, was held to be invalid under the terms of the Code provision we have quoted. The court said: "As the earlier part of section 2 of article 66 provides that no mortgage shall be a lien for any sums of money to be loaned or advanced after its execution except from the time such loan or advance shall be actually made, it becomes necessary to insist upon a strict compliance with the next clause of the section which requires all such mortgages to *specifically state the amounts of the advances and the times when they are to be made* in order to enforce the obvious policy of the law upon that subject, which is to afford to the public, when about to deal with the mortgaged property or its owners, accurate and reliable information as to the extent of the liens thereon and the times from which they become effective. The mortgages having been in fact intended to secure future advances and failing to comply with the positive requirements of the section last referred to of the Code, they are under its express provisions altogether invalid."

In *New Baltimore Loan & Savings Assn. v. Tracey,* 142 Md. 211, and *Western National Bank v. Jenkins,* 131 Md. 239, the amounts of the mortgage loans were paid to the mortgagors, but contemporaneous provisions were made for the future application of the funds, for the mortgagees' protection, in the improvement of the mortgaged property. It was held in those cases that the statute in regard to mortgages for future advances had not been violated. But in this case the specified amount of the first mortgage loan was never paid to the borrower or for his benefit. On the day after the mortgage was executed, the mortgagee drew three checks for amounts aggregating the loan, payable to the order of the

Groh Realty Company, and delivered them to his son, the president and practically the owner of the company, who, as already stated in this opinion, deposited one of them on October 20th, and another on November 30th, while the third has never been used. The checks were all drawn on the same bank account of the mortgagee. The only conceivable reason for drawing more than one check for the amount of the mortgage loan is the purpose indicated by the successive payments to which they were in fact partially applied. There was no certification of the checks, and they were drawn against an interest bearing account from which the mortgagee presumably would continue to profit to the extent of the accruing interest until the checks were debited. The custodian of the checks must be regarded, under the evidence, as the agent both of the first mortgagee and of the real borrower, and he appears to have had full authority with respect to the plan of financing and partial payments in accordance with which he acted. It was a method which we cannot sanction, in view of the quoted statute, requiring that a mortgage which is in reality designed to secure future advances shall disclose such an intention. The statute would be largely nugatory if the device adopted in this case were held to be consistent with its terms.

As against the specific liens of labor and material claimants, who contributed to the improvement of the mortgaged land, both the first and second mortgages are invalid because the recited considerations, which the annexed affidavits purported to verify, were not true and *bona fide* as set forth in the mortgages; and as against the mechanics' liens the first mortgage is invalid for the further reason last stated. But we are unable to concur in the decree of the lower court in so far as it may be construed as subordinating the mortgages to judgments recovered against the present owner of the mortgaged property prior to his acquisition of the title. To the extent of the money actually advanced under the mortgages, which was used in the purchase and improvement of the property, it is just that they should be preferred to judgments

previously rendered on claims which could not have been contracted on the faith of the judgment debtors' subsequently acquired property interests. Invalid mortgages must yield priority to the specific liens of attachments (*Ressmeyer v. Norwood; Cockey v. Milne, supra*), but it has been held that a judgment, being only a general lien, must be subordinated to the superior equity of a prior specific lien created by a defective mortgage or conveyance. *Dyson v. Simmons*, 48 Md. 215; *Valentine v. Seiss*, 79 Md. 187; *Cramer v. Roderick*, 128 Md. 422. The same rule should apply, with at least equal force, when the competing judgment and mortgage liens are considered in relation to property purchased, after the rendition of the judgment, with the proceeds of loans which the mortgages were given to secure and to which use of the money they expressly referred. In the cases last cited this court said that the judgment creditor stands in the place of his debtor and can only take the debtor's property subject to the equitable charges to which it was liable in his hands when the judgment was rendered. The equitable charge of the defective purchase and improvement money mortgages was impressed upon the mortgaged property when the title became vested in the judgment and mortgage debtor whose interests are involved in this suit, and in our opinion the mortgage liens must be preferred to judgments. With that qualification the decree will be affirmed.

> *Decree affirmed with the qualification stated in the opinion, the appellants to pay the costs.*