## In re SHAPIRO.

### No. 9182.

District Court, D. Maryland.

Nov. 2, 1940.

580

Louis M. Silberstein, of Baltimore, Md., for trustee.

Z. Townsend Parks, Jr., of Baltimore, Md., for petitioner Freeny.

CHESNUT, District Judge.

In the course of administration of the bankruptcy case of Sidney Shapiro, Benjamin L. Freeny, trustee, filed a claim in the amount of $3,270.65, secured by a second mortgage given to him by the bankrupt for $3,900 dated March 2, 1938. Sandler, the trustee of the bankrupt, objected to the allowance of the mortgage claim, and after hearing the parties the referee decided that the claim was invalid because the mortgagee's affidavit to the consideration was not true in fact. The mortgagee

has petitioned to review the order of the referee to that effect.

Testimony was taken before the referee who has summarized it in a certificate and memorandum opinion. Some additional testimony was taken in court in support of the petition to review. The facts are not in dispute and may be briefly stated.

Shapiro, the bankrupt, was engaged extensively in owning, improving, renting and selling real estate in Baltimore City. About six months before the making of the mortgage in question he proposed to buy a residential property on Linden Avenue in Baltimore City, and then improve it for purposes of rental or sale; but he lacked funds to finance the transaction. He thereupon applied to Benjamin L. Freeny, a Baltimore lawyer largely engaged in real estate practice, to assist him in negotiating the purchase price, in partially financing the transaction, and to give his professional services in the examination of title and other incidental matters affecting the transaction. The negotiations for the purchase and financing of the property were somewhat protracted but were finally successfully consummated. The property was owned by one Williams and another as trustees. The purchase price agreed upon was $11,500, of which a small part had been paid on account before the final settlement, when a purchase money first mortgage for $9,500 was given to the vendors and the balance due them paid in cash. Shapiro, at the inception of the negotiations for the purchase, had agreed to pay Freeny $1,000 as his fee for all services in connection with the transaction. Freeny advanced from his personal funds from time to time all the moneys needed by Shapiro for the purchase of the property, including the initial payments to the vendors (with the exception of $100 advanced personally by Shapiro) and the balance in cash payable to them at the time of the settlement, and also from time to time all other cash disbursements required to be made by Shapiro for examination of title and various incidental fees and expenses. The total of the sums due to Freeny from Shapiro at the time of the settlement for these purposes, including the $1,000 fee, was $3,900. On the day of settlement Freeny, as trustee, drew his check for $3,900 on a trustee's fund belonging to himself in small part but principally to clients. He used this fund to reimburse himself for the cash expenditures which he had

made for Shapiro in the transaction, and in payment of his fee. Of this amount $1,487.82 was paid to the vendors as the cash balance then due to them, and $900 reimbursed Freeny to that extent for a prior partial payment on the purchase price to the vendors. On the day of settlement Shapiro executed a first purchase money mortgage to the vendors for $9,500; and on the same day he executed a second mortgage to Freeny as trustee, which recited: "Whereas, the said mortgagor stands and is justly indebted unto the said mortgagee in the full and just sum of $3900, same being money this day advanced by the said mortgagee to the said mortgagor to be applied as part of the purchase money for the hereinafter described property, and which the said mortgagor agrees to repay to the said mortgagee as follows:".

The mortgage was made on a standard conventional printed form of mortgage customarily used in Baltimore City and purchasable from a publisher, and was promptly recorded. This printed form contains blanks for the insertion in handwriting or typewriting of the particulars of the specific mortgage transaction; and the recital above mentioned, together with special provisions for periodic payments by the mortgagor, on account of principal, interest, current expenses on the property and interest payments on the first mortgage, were typewritten. The phraseology in the recital with respect to the purchase money character of the mortgage followed the usual conventional phraseology for purchase money mortgages customary in Baltimore City. The typewriting on the mortgage was done by Freeny's office secretary, Margaret C. Schierer, who also executed the conventional notarial certificate reciting the acknowledgment of the mortgage by Shapiro and the statutory required affidavit by Freeny. The notary's certificate as to this affidavit read as follows: "At the same time also appeared Benjamin L. Freeny, Trustee, mortgagee and made oath in due form of law that the consideration set forth in said mortgage is true and bona fide as therein set forth."

■ It appears that partial payments were made by Shapiro in accordance with the mortgage and that the balance due Freeny as mortgagee was $3,270.65. Under an order of court the property was sold in the bankruptcy administration for a sum sufficient to pay the balance due on

the first and second mortgages. The question presented by these facts is whether the mortgage is invalid by reason of an alleged false affidavit. If the affidavit was consciously and intentionally false, then under the Maryland decisions it constituted in legal effect no affidavit at all, and the mortgage was therefore invalid. Ressmeyer v. Norwood, 117 Md. 320, 330, 83 A. 347; Groh v. Cohen, 158 Md. 638, 641, 149 A. 459. The Maryland Code (Bagby's 1935 Supplement) Art. 21, § 33, provides: "No mortgage shall be valid except as between the parties thereto, unless there be endorsed thereon an oath or affirmation of the mortgagee that the consideration in said mortgage is true and bona fide as therein set forth;".

It will be noted that what the statute requires is an affidavit that the *consideration* set forth in the mortgage is true and bona fide as therein set forth. It is not disputed in this case that Shapiro, the mortgagor, was in fact indebted to Freeny as trustee, the mortgagee, in the precise sum of $3,900 as stated in the mortgage; but the view adopted by the referee was that the affidavit was false because the *recital in the mortgage,* made by the mortgagor, and of course known to Freeny, was incorrect in that it described the $3,900 as— "money this day advanced by the said mortgagee to the said mortgagor to be applied as part of the purchase money for the hereinafter described property." It is also not disputed that of the $3,900, $1,487.82 was then paid to the vendors as the balance due on the purchase price, and $900 had been previously paid by Freeny to the vendors as part of the purchase price; but it is also true that the balance of the $3,900 ($1,512.18) although then due and owing from Shapiro to Freeny for further incidental expenses of the transaction, was not a part of the purchase *price* paid to the vendors although it was a part of the whole purchase *cost* to Shapiro. The question then seems to narrow to this—was Freeny's affidavit, that the "consideration" in the mortgage was true and bona fide, false because of the partially erroneous recital that the *whole* of the $3,900 was to be applied as part of the purchase money. Or, as otherwise stated, does the word "consideration" as used in the statute and in the affidavit necessarily include the recital as to the legal characteristic of the amount of the indebtedness with respect to whether it is in legal effect correctly a part of the purchase

money. This appears to be a new question of Maryland law not covered by any decision of the Maryland or any other court called to my attention.

In thus stating the question I have assumed, as determined by the referee and contended for by counsel for the trustee in bankruptcy, that incidental expenses incurred by a purchaser of real estate, in addition to the purchase price to be paid to the vendors, is not properly to be considered a part of the "purchase money" for the property within the meaning of that term as used in the Maryland statute which provides (Bagby's Code, 1924, Art. 66, § 4, p. 2196) : "Whenever lands or chattels real are sold and conveyed and a mortgage is given by the purchaser at the same time to secure the payment of the purchase money, in whole or in part, such mortgage shall be preferred to any previous judgment or decree for the payment of money which may have been obtained against such purchaser, whether the mortgage is given to the vendor of the property so purchased or to a third party who advances the purchase money in whole or in part; provided, such mortgage recite that the sum so secured is in whole or in part the purchase money of the property purchased; provided, however, that nothing in this section shall be held or construed to affect rights existing on April 7, 1900."

And I think this assumption is correct and required by the Maryland decisions. Heuisler v. Nickum, 38 Md. 270; Glenn v. Clark, 53 Md. 580, 608; Anderson v. Ames, 6 Md. 52. It also seems to be in accordance with the general law on the subject. 41 C.J. (Mortgages) § 472, p. 531; Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. 1, § 253, p. 445; Jones on Mortgages, 8th Ed., Vol. 1, § 586, p. 890; Wermes v. McCowan, 286 Ill.App. 381, 3 N. E.2d 720; Chase National Bank v. Sweezy, Sup., 281 N.Y.S. 487, affirmed 236 App. Div. 835, 259 N.Y.S. 1010; Id., 237 App. Div. 818, 260 N.Y.S. 983; Joseph v. Donovan, 1933, 116 Conn. 160, 164 A. 498; Yarlott v. Brown, 86 Ind.App. 479, 149 N.E. 921; Continental-Equitable Title & Trust Co. v. Conservation Bldg. Ass'n, 266 Pa. 298, 109 A. 776; Syracuse Savings & Loan Ass'n v. Hass, 134 Misc. 82, 234 N.Y.S. 514; Re Quigley Motor Sales, Inc., 2 Cir., 75 F.2d 253.

It will be observed that the judicial decisions in Maryland and elsewhere seem to make a distinction, with respect to pur-

chase money mortgages, between the *purchase price* agreed to be paid to the vendor and the *purchase cost* to the vendee. And therefore the term "purchase money" in this connection is limited to the purchase price, and does not properly include other elements of cost to the vendee; although it is true in the financial sense that not only the purchase price paid to the vendors but the additional expenses of the vendee properly enter into a capitalization of the cost of the property to him under proper financial accounting including, perhaps, income tax accounting. It is also the testimony of Freeny in the case that while he does not particularly recall whether the wording of the recital in the mortgage as actually written by his secretary, was prepared by her or dictated by himself to her, he had generally the thought with respect to purchase money mortgages that they could properly include the incidental expenses to the vendee. And as to this it is also to be noted from the testimony of some experienced real estate conveyancers in Baltimore City, that it is not infrequent for so-called second purchase money mortgages given by the vendee to some one who advances money for the transaction (other than the vendor), to describe the whole sum advanced, including incidental expenses of the vendee, as purchase money; although it is the recognized better view that this is not strictly legally accurate, and is probably caused in many cases by the use of a printed form of purchase money mortgage which does not provide wording to make the distinction between purchase money proper and other expenses. The recital in the particular mortgage that the $3,900 represented money "this day advanced by the said mortgagee" is I think of no particular significance in this case as it is very conventional phraseology used in describing a present indebtedness to be secured by the mortgage.

There is no evidence in this case to indicate that the mortgagee was acting other than in actual and entire good faith. There was no advantage to him in describing the admitted indebtedness as wholly, instead of only partially, purchase money. So far as the particular transaction is concerned there was no need for his security in taking this mortgage to have described the money as "purchase money" at all. The only preferential status of a purchase money mortgage over an ordinary mortgage is, by the statute, that the former is "preferred to any previous judgment or decree for the payment of money which may have been obtained against such purchaser". In the present case there were no such judgments or decrees against Shapiro, the purchaser, and this was known to Mr. Freeny by reason of his title examination. It seems apparent that the description of the whole $3,900 as purchase money was therefore not a deliberate recital made for the purpose of obtaining some unjust advantage in this instance by virtue of the recital, but was doubtless due more to a matter of routine practice in such situations customary in Freeny's law office. It was suggested that a recital in a mortgage that the indebtedness is a part of the purchase money may be of legal importance with respect to the dower rights of the wife of the mortgagor. It was, however, conceded by counsel for the trustee in bankruptcy that Shapiro, the mortgagor, was not married; and as the deed to Shapiro and the mortgage by him were simultaneous, the mortgage would anyhow have priority over dower rights. Glenn v. Clark, 53 Md. 580. There is, therefore, in this case nothing to show that Freeny's affidavit was intentionally or knowingly false. The trustee in bankruptcy has the status of a judgment creditor as of the date of bankruptcy (which in this case was nearly a year after the giving of the mortgage), but of course not that specifically of a judgment creditor of date prior to the mortgage. Bailey v. Baker Ice Machine Co., 239 U.S. 268, 276, 36 S.Ct. 50, 60 L.Ed. 275. The referee's opinion apparently proceeded on the theory that the mortgage was invalid if the affidavit was materially incorrect in point of fact, irrespective of the affiant's good faith in making the affidavit; or, as the referee puts it, if the affidavit was "materially false". He also found from the testimony in this case, that there was no evidence that the mortgagor was insolvent at the time of making the mortgage, or that the conveyance was in fraud of creditors.

After reviewing the Maryland decisions, I reach the conclusion that the mortgage in question was not rendered invalid by the alleged false affidavit. The statute provides that a mortgage shall not be valid, except as between the parties, unless it contains the required affidavit. Here the mortgage did contain the affidavit in the precise form required by the statute.

It is well settled in Maryland that if the affidavit is absent, or if the affidavit is included but is in form substantially different from that required by the statute, then the mortgage (unless good as an equitable mortgage) is invalid as against subsequent creditors without actual, as distinguished from constructive, notice, and irrespective of fraud. Cockey v. Milne's Lessee, 16 Md. 200; Nelson v. Hagerstown Bank, 27 Md. 51; Phillips v. Pearson, 27 Md. 242; Reiff v. Eshleman, 52 Md. 582. But the statute does not prescribe the effect of an affidavit good in form but incorrect in fact; and therefore this is necessarily left for judicial determination. In at least two cases the Maryland Court of Appeals has dealt with mortgage affidavits which were false, and which invalidated the mortgage either wholly or as against certain creditors; but in both the facts clearly indicate that the affidavit must have been knowingly and intentionally false. In Ressmeyer v. Norwood, 117 Md. 320, 83 A. 347, the mortgage from a husband to his wife recited an indebtedness of $6,657 when there was no such indebtedness to the wife, and the real purpose of making the mortgage was to have it assigned by the mortgagee to others for the purpose of preferring certain creditors of the husband. And in Groh v. Cohen, 158 Md. 638, 149 A. 459, the recital of an indebtedness by the mortgagor was fictitious in that the mortgagor was purely a "straw man" in the transaction; the real debtor was a third person not named in the mortgage, and the form of the transaction was fictitious to enable the real debtor, against whom there were outstanding judgments, to acquire and improve certain property without subjecting it to the claims of prior judgments against it; and one of the mortgages in the case was also invalid because it did not comply with the Maryland statute regarding mortgages for future advances. In Harrison v. Robinette, 167 Md. 73, 173 A. 60, a mortgage given to secure an unearned contingent fee was held invalid for failure of consideration. In the unreported decision of this court in the case of Broumel, Trustee, v. Young (Re Harford Pure Rye Distilleries)[1] referred to in the referee's opinion, the affidavit was considered sufficiently incorrect to invalidate the mortgage where the consideration therein stated was an indebtedness of about $28,500, when the actual indebtedness was only about $1,500, and the balance was what in legal effect would constitute future advances, and the transaction was really an attempt to prefer certain creditors.

Other Maryland cases are to the effect that the mortgage will be upheld unless there is a substantial departure in the affidavit from the prescribed statutory form, or an intentionally false affidavit. In Denton v. Griffith, 17 Md. 301, 304, the affidavit was held bad because the bill of sale or mortgage recited a *paid* consideration of $1,500, while the affidavit recited that the mortgagor "stands justly indebted to [the mortgagee] in the sum of $1,500, clear of all deductions". But in Marlow v. McCubbin, 40 Md. 132, 139, the affidavit was held good where it stated that "the consideration mentioned in the aforegoing mortgage is bona fide as therein set forth" (without stating that it was true). With regard to this omission the court said: "The insertion of the word 'true' would, in our opinion, impart to the affidavit no additional substance or force. The consideration mentioned in the instrument, if fabricated and false, *could not be bona fide,* nor if untrue could it be therein set forth in good faith. We think it very clear, (and indeed it was so conceded by the appellant's counsel in argument) that *falsity in the consideration* as stated in this mortgage, would warrant the assignment of *perjury upon this affidavit.*" (Italics supplied.)

In Smith v. Myers, 41 Md. 425, the mortgage was held valid where it recited an indebtedness of $5,000 on a promissory note, although only $4,400 was loaned by the mortgagee to the mortgagor, the difference of $600 being deducted as a bonus for the loan. And in Govane Bldg. Co. v. Sun Mortgage Co., 156 Md. 401, 144 A. 486, a mortgage was held not invalid by reason of an alleged false affidavit where it purported to secure the sum of $5,000, while the amount actually advanced to the mortgagor was about $3,500, the former sum being that which the mortgagor expected to pay, and there being no fraud in the transaction. Although it does not appear from the opinion in that case, a reference to the record itself (see Records and Briefs, 156 Md. Part 5, Record page 102) shows that the mortgage in question contained a recital, apparently incorrect, that the indebtedness secured was

---

[1] No opinion filed.

the balance "of the purchase money" for the described property. See, also, Comegys v. Clarke, 44 Md. 108. The purpose of the statute, as early explained in Denton v. Griffith, supra, was to prevent fraudulent transfers of property upon false or pretended considerations, and to that end, the statute requires an affidavit to the truth and bona fides of the consideration.

I think it is fairly to be gathered from these decisions that the purpose of the statute is gratified when the affidavit is made in good faith and is therefore not intentionally or consciously false. The evident purpose of the statute as stated in Denton v. Griffith is to prevent transfers for a fictitious consideration to the prejudice of creditors. This purpose of the statute is gratified when the mortgagee takes the responsibility of making an affidavit to the truth and bona fides of · the consideration, subject to the pains and penalties of a prosecution for perjury if the affidavit is false. See Pleasanton v. Johnson, 91 Md. 673, 675, 47 A. 1025. In other words, the affidavit must be false in the perjury sense to render the ̇ mortgage invalid merely on the ground of a false affidavit. Of course the true consideration can always be shown even by parol testimony, and the mortgage will be upheld only as security for the real and not a mistaken consideration, despite the affidavit, where it is in good faith but mistakenly made. The intent of the statute could hardly have been otherwise because many real estate settlements are complex in adjustment of taxes, expenses, accumulated or deductible interest, advance payments, and liquidated encumbrances. It could hardly have been intended that an affidavit to an honest, even though careless, mistake in determining the correct figures for the adjustment and, in some particular cases, possibly the exact amount of the mortgage for the balance of purchase money, should invalidate the whole mortgage. In the instant case there was no mistake made in the adjustment, and the mortgage correctly stated the exact amount of an existing indebtedness which the mortgage was given to secure. The only mistake was in describing the whole amount of this indebtedness as balance of purchase money. This may well have been a mistake of law rather than of fact and may be treated as surplusage in this case where there was no fraudulent intent.

It is at least doubtful whether the affidavit to the truth of the "consideration" includes the oath to the correctness of the mortgage recital of the legal status of the indebtedness as "purchase money". With respect to a mortgage the ordinary and common acceptation of the term "consideration" has reference to the amount of the indebtedness to be secured by the mortgage; and all the Maryland cases which have been called to my attention dealing with the subject matter have dealt with the amount of the mortgage indebtedness as the consideration referred to in the affidavit. No case that I have seen has extended the scope of the affidavit to include recitals in the mortgage other than the amount of the indebtedness. Of course the affidavit to a mortgage which recites an *existing* indebtedness may be untrue if the indebtedness is not an existing one, but is intended to cover future advances, where the statute prohibits such a mortgage unless the times and amounts of future advances are stated. High Grade Brick Co. v. Amos, 95 Md. 571, 590, 52 A. 582, 53 A. 148.

For these reasons I have concluded that the mortgage involved in this case was not rendered invalid by the affidavit; and it is unnecessary to consider whether, if so invalid at law, as a defective executed mortgage, it would nevertheless be upheld, under the circumstances of this case, as an equitable mortgage creating a specific lien good as against the rights of the trustee in bankruptcy under section 70, sub. c of the Bankruptcy Act of 1938, 11 U.S. C.A. § 110, sub. c. See In re Bowling Const. Corp., D.C., 19 F.2d 604, affirmed 4 Cir., 23 F.2d 403. The very recent decision of the Maryland Court of Appeals in the case of Jackson v. County Trust Co., 176 Md. 505, 6 A.2d 380, seems to indicate quite clearly that the mortgage would be sustainable as an equitable mortgage. In that case the court so held with respect to a mortgage defectively executed because the affidavit to the consideration made by an agent of the mortgagee did not include the further statement that he was the agent of the mortgagee. Compare Davis v. Harlow, 130 Md. 165, 100 A. 102, and Millikin v. Second Nat. Bank, 4 Cir., 206 F. 14, and the discussion of both in Re Bowling Const. Corp., supra, D.C., 19 F.2d at page 607. With respect to the effect of such equitable mortgages the Maryland decisions distinguish between mortgages defective by reason only of

some formality of execution and mortgages which are substantially invalid by reason of express statutory policy, as, for instance, where the mortgages do not comply with the Maryland statute regarding future advances. See Bagby's Maryland Code, Art. 66, § 2, and opinion of this court filed August 14, 1940, in the matter of this same bankrupt, In re Sidney Shapiro, 34 F.Supp. 737, relating to a mortgage made by him to Schumacher & Seiler, Inc.

It results that the order of the referee disallowing the secured claim of Benjamin L. Freeny, trustee, must be and is hereby reversed.