HENRIETTA   R.   GLENN,   and   others   *vs.*   REBECCA
CLARK.

*Construction of Code, Art.* 16, *secs.* 31 *and* 16—*Cross-bill—*
*Dower.*

The Act of 1832, ch. 302, (Art. 16, sec. 31, of the Code,) could have
no application to mortgages executed before it was passed. Art.
16, sec. 31, of the Code, confers no power upon the Court to confirm
a mortgage executed by a *feme covert* infant, after she has attained
full age and against her consent.   It confers the power to confirm
and make valid a conveyance by an infant *feme covert*, which might
be shown, during her infancy, to be equitable, expedient or proper
looking to her benefit, and does not apply to any case, after such
infant *feme covert* has attained full age.

A cross-bill which seeks no discovery, and makes no defence, which
was not equally available by way of answer to the original bill,
will be dismissed.

The right of a party to amend his answer under Art. 16, sec. 16, of
the Code is not *ex debito*, but depends upon the sound discretion of
the Court.   In a case where *laches* cannot be imputed to a party,
and the facts constituting the grounds of defence have been dis-
covered for the first time during the progress of the cause, it is
equitable that the amendment be allowed.

Where a husband had during the coverture a beneficial legal seisin
in fee in certain real estate, and his wife was of full age when she
united in two mortgages of the same, she cannot claim dower
against the mortgagees and their assigns, except subject to such
mortgages, and is bound to contribute for the payment of the
mortgage debts and interest, and she is dowable of the surplus
only.

If under the age of twenty-one years at the time of the execution of
those mortgages or either of them, the rights of the wife are in no
manner bound or affected thereby.   An infant *feme covert* cannot
relinquish her dower by uniting in a mortgage, but the same is
void as to her.

But although the wife was not of full age when the first mortgage
was executed, yet if the same was given to secure the purchase

money, either to the party from whom the title was derived, or to a third person from whom the purchase money was obtained by the purchaser upon an agreement that such mortgage should be executed, she cannot claim dower as against the mortgagee or his assigns, her right of dower being subordinate to the lien of the mortgage, to the payment of which she is bound to contribute, and she is dowable of the surplus only.

A wife's right to dower in the equitable estate of her husband, exists only where the husband is possessed of such estate at the time of his death.

Where a conveyance is made to a purchaser and at the same time and as part of the same transaction, the purchaser executes a mortgage to secure the purchase money, the seisin thus acquired by the purchaser is of such an instantaneous or transitory nature, that the dower of his widow does not attach, or in other words, her right of dower is subordinate to the right of the mortgagee. If, instead of making the mortgage directly to the vendor, it be made to a third person, who furnishes the purchase money, or from whom it is borrowed by the purchaser for the purpose of paying the purchase money, the same principle of equity applies in favor of the mortgagee, provided the whole constituted one and the same transaction; and in such case the rights of the mortgagee are paramount to the right of dower of the wife of the purchaser.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed on the 10th day of July, 1874, by the appellee, widow of John Clark, who died intestate in July, 1871, claiming dower in a lot of ground situated on the north-west corner of Baltimore and Calvert streets, in the City of Baltimore, and claiming also one-third part of the rents and profits which have arisen since the death of her husband. The bill alleges that the defendants therein named are in possession of the property, claiming title thereto, and prays that they be compelled to produce all title deeds, evidences and writings relative to said property and estate in their possession, and under which they claim and hold the same; and prays for general relief.

The answer admits that the late John Clark was at one time seized in fee simple of the real estate mentioned in the bill, and avers that as far back as the 12th day of June, 1834, he ceased to be the owner thereof, and all his estate, title and interest therein, with seisin and possession thereof was vested in and passed to the General Insurance Company of Maryland, the immediate predecessor in title of the respondents, who derived their title under the will of the late John Glenn, in the manner and in the proportions mentioned in the answer. The answer then alleges that certain mortgages of the property were executed by John Clark, in which his wife, the complainant, united, thereby relinquishing all right and claim of dower in the premises, one of them to the Savings Bank of Baltimore, dated January 19th, 1830, for $25,000, and one to Columbus O'Donnell, dated July 19th, 1831, for $25,000, and John Clark afterwards executed two other mortgages of the same property, one of them to Evan Poultney, on the 5th day of January, 1832, for $30,000, and one to the General Insurance Company of Maryland, on the 16th day of January, 1834, for $15,000, the two last mentioned mortgages being executed without the concurrence of his wife. These mortgages are particularly described in the answer, which sets forth the manner in which the title of John Glenn, the respondents' testator, was acquired, as follows:

The said Museum property, on or about the 12th day of June, 1834, default having been made in the conditions of said mortgage, was sold at public sale, according to law, under the last mentioned mortgage, and on foreclosure thereof, to the General Insurance Company of Maryland, by William H. Gatchell, trustee, and was purchased at such trustee's sale by the mortgagee, the General Insurance Company, for $5,000, subject to the mortgages hereinbefore mentioned, to the Savings Bank of Baltimore, Columbus O'Donnell and Evan Poultney, amounting to $80,000 in all, with interest. The said sale

was duly ratified by Baltimore County Court on the 26th
day of September, 1834; the said General Insurance Com-
pany, from and after said sale, became immediately seized
and possessed of the said property, although a deed there-
for was not executed by the said trustee to the company
until the 19th day of May, 1854; and the said mortgagee,
Columbus O'Donnell, default having been made in the
payment of his mortgage aforesaid, did, on or about the
26th of September, 1834, assign the same to a certain
George H. Steuart, as his attorney and trustee, for the
foreclosure thereof; and the said Steuart, in virtue of such
assignment and authority, having realized from the sale
of the other property, in said mortgage described, a por-
tion of said mortgage debt, did, subsequently, on or about
the 11th day of June, 1835, unite with said O'Donnell in
assigning to a certain George Brown the remainder of said
mortgage debt, to wit, $14,940.16, together with the mort-
gage aforesaid upon said Museum property, securing the
same; and the said Brown, on or about the 18th day of
February, 1839, did, in his turn, assign and transfer the
said mortgage and mortgage debt to the General Insur-
ance Company of Maryland, for and on payment of the
sum of $15,000, being the amount of said mortgage debt,
with interest, then remaining due and unsatisfied. And
the said General Insurance Company, holding the said
Museum property as aforesaid, subject to the mortgage for
$30,000, executed as aforesaid by said Clark to Evan
Poultney, which mortgage was assigned to Poultney, Elli-
cott & Company, did, on or about the 6th day of February,
1840, come to an account stated with John Glenn and
John P. Kennedy, permanent trustees of said Poultney,
Ellicott & Company, then insolvent, of and concerning the
balance due on said mortgage, and it being ascertained
that there was a balance of $1157 due on said mortgage,
over and above a debt of $6415.96, due said company by
said insolvents, which was allowed in account, the said

company did thereupon pay said balance of $1157 to said trustees, in settlement of said mortgage, making $7572.96 in all, paid by said company on said mortgage account at that time. The General Insurance Company being so seized and possessed of the said Museum property, subject likewise to the mortgage of $25,000, and interest, executed by said Clark and wife as aforesaid to the Savings Bank of Baltimore, and having duly paid the interest thereupon from September, 1834, to October 4th, 1855, did, on the last named day, redeem the said mortgage by a substituted mortgage of the said Museum property, on its own behalf, to secure the payment of its own promissory note, at five years from date, for $25,000, with interest, payable semi-annually. And the said General Insurance Company went on accordingly paying said interest until the 17th of March, 1864, when said company finally satisfied the entire principal debt of $25,000 to the Savings Bank, and was released therefrom by deed of that date. The General Insurance Company, on or about the 2nd day of July, 1855, sold the said Museum property, together with certain other parcels of property, to the respondents, Henrietta Glenn, and John Glenn and the late William W. Glenn, executors of Judge John Glenn, deceased, for the sum of $44,000, subject to the mortgage of $25,000 to the Savings Bank of Baltimore, at that time in full force and effect, and did, on the 2nd day of June, 1866, by deed duly executed and recorded, convey the said Museum and other property, in pursuance and consummation of the sale aforesaid, to the respondents, Henrietta R. and John Glenn, and the deceased, William W. Glenn, then trustees of the estate of John Glenn, deceased, under the decree of the Circuit Court of Baltimore City. And in the said deed it was recited, that the recited mortgage of $25,000 to the Savings Bank of Baltimore, which the General Insurance Company had satisfied as aforesaid, had been so satisfied with money paid therefor out of the funds of the estate of

Glenn, *et al. vs.* Clark.

the late John Glenn, by his executors as aforesaid. From the time of the purchase of said property by the executors of John Glenn, deceased, in July, 1855, down to the extinguishment, in 1866, of the mortgage last mentioned to the Savings Bank, the money for the payment of the interest on said mortgage was likewise paid out of the estate of the said deceased.

The answer denies that the complainant has any dower interest whatever in the premises, by reason of the estate of her husband having been converted into an equitable one by the mortgages of January 19th, 1830, and of July 19th, 1831, in which she concurred, and by reason of her husband having thereafter parted with and being divested of his equitable estate in the manner stated in the answer.

The respondents further claim that they are entitled to be protected from the claim of dower of the complainant by reason of the encumbrances on the property, created with the concurrence of the complainant, having been paid and satisfied by the parties under whom they claim in the manner stated in the answer. To this answer a general replication was filed. Afterwards one of the original parties defendant having died, leaving infant heirs, an amended bill of complaint was by leave of the Court filed, making new parties; in this amended bill, the complainant states that "she only claims to be endowed of the surplus remaining after the payment of the mortgage or mortgages, in which it can be shown she joined according to law, in such mode as to bar her dower in the premises," and offers to " allow whatever sum may be ascertained to be fairly and equitably due by her as her contribution towards the redemption of such mortgage or mortgages as it may appear she joined in according to law, so as to bar and defeat her dower."

By agreement the answers filed to the original bill were taken and considered as answers to the amended bill.

On the 30th November, 1877, the following agreement was filed in the cause:

"It is admitted, that the complainant Rebecca Clark intermarried with John Clark, late of Baltimore City, on the 4th day of December, 1828, and that John Clark died intestate on the 18th day of July, 1871, leaving the complainant surviving him, she being now sixty-seven years of age, and that during her coverture, her husband was seized and possessed in fee simple of the property mentioned in the bill, situated on the North-west corner of Baltimore and Calvert streets, known as the 'Baltimore Museum.'"

(Signed by the solicitors.)

No testimony was taken in the case; but on the 16th September, 1878, the following agreement was filed:

In addition to the several matters mentioned in the agreement of counsel heretofore filed in this case, it is further agreed and admitted as follows:

1. That on the 19th day of January, 1830, John Clark, with the concurrence of his wife, Rebecca Clark, the complainant in this case, executed and delivered the mortgage for $25,000, to the Savings Bank of Baltimore, as stated in defendants' answer.

2. That on the 19th July, 1831, he made another mortgage to Columbus O'Donnell for $25,000, the complainant also concurring therein, as stated in the answer of defendants.

3. That on the 5th day of January, 1832, he without the concurrence of the complainant, executed a mortgage to Evan Poultney for $30,000, as stated in defendants' answer.

4. That on the 16th day of January, 1834, he likewise, without the concurrence of the complainant, executed the mortgage for $15,000 to the General Insurance Company of Maryland, as stated in defendants' answer. And it is agreed that the defendants' Exhibits A, B, C and D, are said mortgages. A being the original of the mortgage

for $25,000 to the Savings Bank, and D the original of the mortgage for $15,000 to the General Insurance Co., and B and C being certified copies of the mortgages to Columbus O'Donnell and Evan Poultney, for $25,000 and $30,000, respectively; the recitals in said four mortgages are also admitted to be true.

5. That in pursuance of the power contained in the mortgage from said John Clark to the General Insurance Company, the property therein described, was sold on the 12th day of June, 1834, by William H. Gatchell, trustee, as recited by him in his deed therefor to the General Insurance Company, the purchaser at said sale, for $5000, bearing date May 19th, 1854, whereof defendants' exhibit E is the original; the recitals of which deed are admitted to be true.

6. That the mortgage debt of $25,000 not having been paid as stipulated, said O'Donnell, on the 26th day of September, 1834, executed the deed mentioned in the defendants' answer, to George H. Steuart, in trust, said deed being defendants' exhibit F, the recitals of which it is admitted are true.

7. That on the 11th day of June, 1835, said Columbus O'Donnell and George H. Steuart, trustee, executed the deed to George Brown, mentioned in defendants' answer; exhibit G being the original of said deed, and its recitals being admitted to be true.

8. That on the 18th day of February, 1839, said George Brown executed the deed to the General Insurance Company, mentioned in defendants' answer; exhibit H being the original of said deed, and its recitals being admitted to be true.

9. That defendants' exhibit I, is the original of the release of mortgage from the Savings Bank of Baltimore, to the General Insurance Company, dated November 9th, 1855, the recitals of which, it is admitted, are true; and defendants' exhibit K, is the original mortgage to said

Savings Bank, from said General Insurance Company, dated October 4th, 1855, but acknowledged and delivered on December 21st, 1855, the recitals of which are admitted to be true; and defendants' exhibit L is the original release of mortgage from the said Savings Bank to said General Insurance Company; said release bearing date 17th March, 1864, and its recitals in like manner are admitted to be true.

10. That defendants' exhibit M, is the original deed from the General Insurance Company to Henrietta R. Glenn and others, bearing date 2nd June, 1866; the recitals of which are admitted to be true.

11. That the allegations in the answer as to the death of the late John Glenn, the execution and contents of his will, and the appointment and qualification of the trustees thereunder, and the names of the beneficiaries thereunder, are true as stated in said answer.

12. That on the — day of 187-, the trustees of said John Glenn's estate, sold the premises mentioned in the proceedings, being the Museum property on the north-west corner of Baltimore and Calvert streets, in fee simple, to the Baltimore and Ohio Railroad Company, for $150,000.

And it is agreed that the said deeds hereinbefore mentioned, may be read in evidence as if regularly produced and proved under a commission, subject to all legal exceptions.

And it is further admitted, that since the sale made by W. H. Gatchell, trustee, on the 12th June, 1834, as shown in the aforegoing agreement, the General Insurance Company and its successors in title, have been in possession of the premises in question, receiving all the rents and profits thereof.

And it is further agreed, that if, upon the argument of this cause, it shall be held by the Court that the complainant is entitled to dower in the property, the papers shall be referred to the auditor to state an account, show-

ing the amount of her claim, according to the usual course of the Court in such cases.

And it is further agreed, that the case shall be peremptorily set down for hearing upon this agreement, and the agreement *heretofore filed,* on the 18th day of October, 1878, with leave to the defendants in the meantime to prove any further facts which they may consider material, either side to have the usual right of appeal. In case of appeal, it is agreed, to save expense, that the original papers and copies referred to in this agreement may be sent up with the record, if desired by either party, and without being transcribed therein.

(Signed by the Solicitors.)

The cause being set down for hearing, the argument thereof in the Circuit Court was begun on the 28th day of October, 1878, when the solicitors for complainant alleged that the complainant was an infant under the age of 21, when she joined in the mortgages of January 19th, 1830, and July 19th, 1831, relying in support of that allegation upon the admission of counsel filed *30th November,* 1877, that she was at that time sixty-seven years of age. The defendants' solicitor being taken by surprise by this averment, and by the construction placed on the last mentioned agreement, asked and obtained the leave of the Court to file a cross-bill, the argument of the cause being suspended for that purpose; and on the 30th day of October, 1878, filed a cross-bill, accompanied with "*Exhibits X. Y. Z.*"

The cross-bill, after reciting the proceedings in the case, refers to the amended bill of the complainant, which was filed after the answers to the original bill had been filed, wherein the defendants stated and relied upon the two mortgages in which the complainant had concurred as valid and binding instruments relinquishing her dower, and that in said amended bill there was no averment or

pretence that she was not of full age when the said mortgages were executed; but thereby impliedly admitted the contrary. The cross-bill further refers to and relies upon the agreement filed on the 16th day of September, 1878, wherein it was admitted that the complainant had concurred in each of the two mortgages mentioned, as stated in the answer of defendants; and denies that the complainant, after such admissions and agreement, and in the absence of any averment to that effect in her bill and amended bill, can now be heard to impeach the validity of said mortgages on the ground of infancy. The cross-bill avers that "the agreement of November 30th, 1877, as to the age of the complainant, Rebecca, was made by the defendants' solicitor, altogether upon the statement of the complainant's solicitor that it was correct, which said statement was no doubt made in good faith, with no intimation to, or idea on the part of the defendants' solicitor, that the question of the age of said Rebecca was in the case further than as affecting the allowance of dower, if any should be allowed, to said Rebecca, and it being wholly immaterial under the rules of the Court to that end, whether she was sixty or sixty-seven or seventy years of age at the time of said agreement, she having been over fifty-six at the time of her husband's death in 1871," and charges "that if there had been any intimation of any defence or right of exemption claimed on the ground of the infancy of the said Rebecca, their solicitor would have required proof of the age of said Rebecca, it being a material fact in that view of the case, and the solicitor could not properly, and would not have made any admission of such fact, and especially in a case where infants are concerned." The bill prays that said Rebecca in her answer hereto, may set up and declare on the record whether she does rely upon infancy to invalidate the otherwise binding effect of her joinder in acknowledging the mortgages aforesaid, and releasing her dower, and if she does, that

she be required to state in her answer and give legal proof of her age at the time when said mortgages were executed, your orators being wholly ignorant thereof.

They further claim and insist that under the pleadings and proof in the principal case, it is too late for the said Rebecca now to set up her infancy, and that she is precluded from disputing the binding effect of her participation in the mortgages aforesaid, if it be found, as alleged, that she released her dower in the premises mortgaged, in manner and form as required by the then existing laws as to the execution or acknowledgment of deeds of *femes covert.* And they insist that the setting up of said alleged infancy of said Rebecca, at the stage of the original cause above stated, was and is a surprise to your orators entitling them to file this cross-bill, and have the same answered and the matters therein averred and set forth adjudicated, so far as equity may require for a fair determination of the rights in dispute in the principal case, and under this cross-bill. They further claim, if it shall appear that said Rebecca was not in fact of full age when the mortgages were executed, that the same shall be confirmed and declared valid, under the power and authority conferred on the Court by Art. 16, sec. 31, of the Code.

It is further alleged " that the premises in question were purchased by said deceased, John Clark, at a trustee's sale, on the 22nd day of September 1828, for $27,000, of which he paid $11,000 in cash, giving his notes for the balance. Of the sum so paid, he derived $3800 from the Savings Bank of Baltimore, and in consideration of that amount, and the payment by the Bank of his notes for the credit payments, he conveyed to the Bank, on April 7th 1829, all his interest in the purchase and the property, which was an equitable right to have a conveyance of the estate in fee simple on payment of the purchase money. In this conveyance, of which a certified copy is herewith filed, marked " *Cross-bill, X,*" the said Rebecca

joined by her acknowledgment according to law, relin-
quishing all claim of dower.  On the same 7th April 1829,
the said Bank leased the premises to Clark, until the 25th
of March 1830, at a certain rent fixed, and with the obliga-
tion on his part, to erect certain buildings on the prem-
ises, as will appear by the original contract or agreement
herewith filed, marked "*Cross-bill Y,*" as part of this bill,
and by the said agreement it is further provided that if
the said Clark, or his assigns, on or before the expiration
of said lease, should pay to the Bank the full sum of
twenty thousand dollars, and all arrears of rent, the said
Bank would convey to him all its interest and estate in
the premises.  And as your orators further charge, it
appears and so was, that the said Clark before the expira-
tion of said lease, and before or about the 19th of Janu-
ary 1830, did come to an agreement with the said Savings
Bank, to purchase the said property from it with all its
rights in and about the same for $25,000, and the said
Bank accordingly, by deed bearing date the said 19th of
January 1830, (of which a certified copy is herewith filed,
marked "*Cross-bill Z,*") did join with the trustees, John
Glenn and George Winchester, heretofore referred to, in
conveying the said premises to said Clark, for the con-
sideration of $25,000, and as part of the same transaction,
did take from him a mortgage for the purchase money of
same amount, and of the same date, which is the mortgage
of 19th January 1830 already in evidence, in which said
Rebecca joined, as by law required, releasing her dower,
and in respect to . which she now sets up infancy.  And
your orators charge, and it will appear by reference to
the conveyances thus recited, that the said Clark never
had any *seisin* of the fee in the said property, except the
instantaneous *seisin* vested in him for the purpose of exe-
cuting said mortgage for the purchase money, to which
*seisin* the dower right of the said Rebecca did not attach ;
and that her release of dower was altogether unnecessary

and superfluous. It will further appear as aforesaid, that the said deed and mortgage last mentioned, were not only executed on the same day, viz., January 19th 1830, but recorded both on the same day, viz., January 21st 1830, the deed being recorded at twenty minutes, and the mortgage at twenty-two minutes past 11 A. M. of that day, leaving no doubt of their being part and parcel of the same transaction. It will therefore further appear that nothing could be more equitable, expedient or proper, than that the said Rebecca should release her dower, (if any she had,) in the said premises, to secure the purchase money thereof, whether she was infant or adult, and that nothing could be more unconscionable than that she should be permitted to assert a right of dower therein, to the prejudice of a mortgagee, or his assignee, for the very purchase money which alone gave to her husband or herself any right in the premises. The bill further alleges that the said John Clark having incurred large expenses in the erection of the very large building upon the premises, known as the "Baltimore Museum," and being unable to pay the purchase money for the ground itself, which as appears by the proof in the case he never did, besides requiring large amounts in his business as a lottery and exchange dealer, was compelled to borrow other moneys for the said purposes, and accordingly borrowed a further sum from Columbus O'Donnell of $25,000, on or about the 18th of July 1831, for which he executed with the concurrence of the said Rebecca, the mortgage of that date already in evidence in the principal case, and it is charged that it was expedient, proper and equitable, that the said mortgage should be made, and that said Rebecca should release her dower to perfect the security thereby given ; and it is insisted that her said release should be ratified and confirmed if, indeed, she was not of full age at the making of the same, which is not admitted.

The bill further charges that the mortgagees had no notice that said Rebecca was laboring under any disability whatever from infancy or claimed so to be, but relied upon her release of dower as valid and operative to all intents and purposes, and further that she was at the time, whether infant or adult, of sufficient age and intelligence to understand the nature and character of her acts, and performed the same freely, voluntarily, and without coercion or improper inducement of any sort.

It is further averred that until the suggestion as aforesaid of the infancy of said Rebecca these orators had not investigated, nor were they aware of the nature of the seisin of said Clark, or the mode in which he acquired his title to the premises in question, except so far as disclosed by the mortgage of January 19th 1830; nor had they been called upon, or deemed it necessary, to go behind the release of dower by that mortgage, assuming it to be valid and operative to all legal intents. They pray that Rebecca Clark may answer; that she may be precluded from setting up her pretended infancy as aforesaid; and in case she should be permitted to set up the same and should prove as she pretends, that she was not of full age when she joined in releasing her dower by and with the mortgages aforesaid, that her said release of dower and the said mortgages in relation thereto may be adjudged to be legal and valid and may be confirmed, as by the Code in the Article and section is aforesaid provided and authorized, and that her pretended claim of dower may be denied, &c.

On the 30th day of October 1878 the appellee filed her answer to the cross-bill, reserving all benefit of exception both of form and substance, to the cross-bill, and especially denying the right of complainants therein to file the same and not waiving her rights by submitting to answer the same, for answer thereto after reciting the proceedings had in the original case, avers substantially as follows:

1st. That the respondent has not either by her original bill of complaint, or by her amended bill or by the plead-

ings or agreements of counsel, in any manner waived or relinquished her right to insist upon her defence of infancy, and that the said defence is properly available for her.

2nd. That by the agreement of November 30th 1877, with respect to her age, the fact is established that she was an infant, under the age of *twenty-one* years at the time when the mortgages of January 19th 1830 and July 19th 1831 were executed, and consequently no further evidence of that fact is required.

3rd. That section 31, Art. 16 of the Code has no operation or effect upon the two mortgages concurred in by the appellee; *first*, because said section is the re-enactment of the Act of 1832, ch. 302, sec. 7, passed after the execution and delivery of said mortgages, and said Act was in its terms prospective, and not retroactive, and *secondly*, because said Act and section of the Code was designed to confer power upon the Courts of equity to confirm and make valid *during her infancy*, the conveyance of an infant *feme covert's* dower made during her infancy, in order to enable any conveyance or lease to be made, which during her infancy, might be shown to be equitable, expedient or proper, looking to her benefit, and was not intended to compel a ratification of her conveyance, against her will during her infancy, nor was it designed to apply to any case after such *feme covert* infant attained full age, as to which said Act was unnecessary, as it was always competent, for the said *feme covert* to release her dower by a new deed after reaching her majority.

4th. Disclaiming all knowledge of the facts and circumstances alleged in the cross-bill as to the acquisition by John Clark of the title to the property in question, and requiring proof of the same; it is alleged that in so far as the same are in conflict with the formal admissions in the answer of the appellants to her original bill, and to the agreed statements of facts on file in this cause, the aver-

ments in respect thereof in their cross-bill are wholly incompetent and inadmissible, not only because they directly contradict deliberate and formal admissions of record, upon matters in respect to which full disclosure and discovery was asked, and professedly given, but also because it is not competent for parties after setting a cause down for final hearing, to seek to alter the case by injecting alleged new facts into the record by means of a cross-bill, which, if available at all, were open to them in answer to the original bill, or by way of evidence in the original cause,    *   *   *   *   *   *   and were, or should have been known to the appellants when their answer was filed, and their title was stated in response to the prayer of the original bill; and that the omission to mention them until this late stage of the pleadings, is not in any degree due to the conduct or representations of the appellee or her solicitors.

5th. It is alleged that upon the facts stated in the cross-bill, John Clark had a beneficial seisin in the property, not instantaneous or transitory merely, and if the appellee's concurrence in the mortgage of January 19, 1830, is not binding upon her, but is void and inoperative, as she insists it was, her right of dower was superior and paramount to the lien of the Savings Bank of Baltimore. And it is further alleged that the claim of the Savings Bank was the claim of a mortgagee lending money to the vendee, wherewith to pay for the property purchased, and in such case, that her right of dower accrued and attached as against said mortgagee, and unless released by her concurrence in said mortgage, which she avers is not the case, is superior to the said mortgage.

6th. It is averred that the appellee was an infant under the age of twenty-one years, when the mortgages of January 19, 1830 and July 19 1831, were executed by her husband with her concurrence, that she received no consideration for uniting therein, that she never alleged or pretended that she was of full age, and never affirmed or

ratified by word or deed, and is advised that she is entitled to claim that the said mortgages are not at all binding upon her, and that she is at liberty to set up her infancy in disaffirmance thereof. If, however, they should be held binding upon her, she tenders herself ready and willing to make her fair and proper contribution towards the redemption thereof according to the practice in such cases—and prays that the cross-bill be dismissed with costs.

To this answer a general replication was filed.

Formal exceptions were filed by the appellants, to the sufficiency of the averments of the original and amended bills, because there is no averment therein that the appellee was an infant at the time of her joining or concurring in the mortgages of January 19th 1830, or of July 19th 1831. And further because there is no averment in either of said bills that her act in joining or concurring in said mortgages, or either of them, was or is void as against her, or voidable by her, or that she pleaded or set up, or relied or intended to rely on such infancy by way of avoidance of the rights or equities set up in the answers, as arising or growing out of her said joinder or concurrence, or by way of avoiding the effect or operation of such joinder or concurrence, in any way upon the rights of the defendants, or of the complainant herself in these proceedings. And they further except to the competency or admissibility of all evidence in the cause, tending to establish or set up the infancy of the complainant.

The appellee on her part, excepted to the admissibility of all the exhibits filed with the cross-bill, (marked Cross-bill, X, Y, Z,) because not proper evidence in the cause.

On the 25th day of March 1879, the cause was submitted, with an agreement that a *pro forma* decree be rendered to the effect that the complainant is entitled to dower in the lands mentioned in the proceedings, and that the cross-bill be dismissed, but reserving all other ques-

tions for the future order and direction of the Court. The present appeal is from the *pro forma* decree passed in pursuance of the agreement.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*H. C. Kennard* and *S. T. Wallis*, for the appellants.

*John P. Poe* and *Bradley T. Johnson*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The first question to be considered in this case, arises upon the exceptions of the appellants to the admissibility of evidence tending to establish or set up the infancy of the appellee, at the time of the execution of the mort-gages of January 19th 1830 and July 19th, 1831.

This exception is based upon the alleged insufficiency of the averments in her original bill and amended bill to raise that issue, and also upon the effect of her admissions in the agreed statement of facts, and in her amended answer, which, it is contended, amount to a waiver of her right to assert or rely upon her alleged infancy, and pre-clude her from denying the binding effect of the mort-gages for that cause.

With respect to the original bill, it is clear that the appellee was not called on to anticipate the defence of the appellants, or to urge or rely upon the fact of her infancy. By her general replication, she put in issue the defences relied on in the answer, and cast upon the respondents the *onus* of proving the existence, due execution and binding effect of the mortgages. Her admission in the agreed statement of facts that " she concurred in the two mortgages as stated in the answer," amounts to no more than an admission of the fact that she had so concurred, and does not import that she was at the time of full age,.

or that the same are valid and binding upon her. In the same manner, her offer in the amended bill to "allow in the settlement of this cause to the defendants, whatever sum may be ascertained to be fairly and equitably due by her, as her contribution towards the redemption of such mortgage or mortgages as it may appear she joined in according to law, so as to bar and defeat her said dower," does not in our judgment amount to an admission that she was of full age, or preclude her from alleging and relying on her infancy, and offering proof in support of that fact, nor can it be construed as a waiver of her rights in that respect. For these reasons the exceptions of the appellants to the bill and amended bill for insufficiency, and their exceptions to evidence of the infancy of complainant are overruled. At the same time we are of opinion that there is no sufficient evidence in the cause, that the appellee was in fact under the age of twenty-one years, when she united in these mortgages. The agreement of November 30th 1877, relied on, for that purpose, cannot in our judgment be construed as establishing the fact. It is stated in the agreement that she was *then sixty-seven years of age ;* but it is not stated at what time she attained that age, it cannot be construed to mean that she had reached that exact age on the day the agreement was filed. If she was 67 on or before the 19th day of July of that year, then it is obvious that she was of full age when she united in the mortgage to Columbus O'Donnell, a fact which would be quite consistent with the agreement; the day and year of her birth are not stated, and it is therefore not clearly shown at what time she reached the age of twenty-one years.

Moreover, looking at the circumstances under which the agreement was made and the evident object and purpose of appellants' counsel in making it, as stated by him, which was solely for the purpose of determining the allawance of dower to the appellee, if any should be allowed,

with regard to which, under the chancery rule, her precise age would not be material, we cannot hold that the agreement establishes the fact of her infancy as alleged. But as we have said, she is not precluded from setting up this defence, and as the case must be remanded, for this and other reasons to be stated hereafter, she will have an opportunity of offering proof on this point, if it shall be deemed material in the further progress of the cause.

The next question to be considered arises upon the cross-bill, and the exceptions of the appellee thereto, and to the admissibility of "*Exhibits X, Y, Z,*" filed therewith.

One ground on which the cross-bill is sought to be maintained, is that appellants' solicitor was taken by surprise, when in the argument of the cause the appellee's solicitors alleged that she was an infant under the age of twenty-one years when she united in the mortgages. But as we have said, there was nothing in the pleadings, or in her admissions, to preclude her from setting up and relying upon her infancy, it is obvious that the cross-bill cannot be supported for this cause.

The only affirmative relief asked by the cross-bill is that the two mortgages in question, in case the same were executed when the appellee was not of full age, shall be confirmed and made valid by the Court under *Art.* 16, *sec.* 31, of the Code.

The power conferred upon the Courts of Chancery by this provision was first given by the *Act of* 1832, *ch.* 302, which was passed after the mortgages in question had been executed. That Act is not retrospective in its operation and therefore could have no application to the present case. But in addition to this objection, it is clear that the provisions of the Act, and of the Code, even if they had been in force at the date of the mortgages, would confer no power upon the Court to confirm a mortgage executed by a *feme covert* infant, after she had attained full age and against her consent. The whole intent and pur-

pose of the statute is to confer upon the Courts the power to confirm and make valid a conveyance by an infant *feme covert*, which might be shown, during her infancy, to be equitable, expedient or proper looking to her benefit, and does not apply to any case, after such infant *feme covert* has attained full age.

The appellants not being entitled to this, the only affirmative relief prayed in their cross-bill, there remains no other ground stated therein upon which the cross-bill can be maintained. The rule is well settled that "a bill of this kind which seeks no discovery, and makes no defence which was not equally available by way of answer to the original bill, will be dismissed." *Story Eq. Pl., sec.* 389.

We refer also to 2 *Daniel Ch. Pl. & Pr.,* 1648 and 1659, where the same rule is stated. "The plaintiff in a cross-bill cannot contradict the assertions in his answer in the original suit." 2 *Daniel,* 1652. It follows that the cross-bill of the appellants must be dismissed. It appears, however, from the matters therein disclosed, with reference to the mode in which John Clark acquired the title to the property in question, and the nature of his seisin thereof, that the appellants may be entitled to a valid defence in this suit, provided the facts are alleged in proper form by way of an amendment to the answer in the original case, and are. established by competent and sufficient proof.

It is very clear that under the rules before stated, these new matters of defence cannot properly be presented by a cross-bill. And the question arises whether the appellants, after the admission made in their original answer, and by the agreement of November 30th, 1877, with respect to the seisin of John Clark, ought to be allowed now to amend their answer, setting out the facts showing the nature and character of the seisin actually held by John Clark. It appears from the allegations in the cross-bill, which we may look at for this purpose, that these facts

were not known to the appellants when their original answer was filed, and the agreement of November 30th, 1877, was made, and that they have since been discovered. It is argued on the part of the appellee that these new facts ought to have been known to the appellants when they answered the original bill, and entered into the agreement above stated, and that it is too late now for them to allege and rely on the same. But when it is considered that the appellants were not parties to the transactions of John Clark in the original acquisition by him of the property, which took place more than twenty-four years before the original bill was filed, and that until the defence of infancy was set up, they had no motive for looking into the title of John Clark and of the appellee, prior to the date of the first mortgage, we think that *laches* in this respect cannot be properly imputed to the appellants, and as the newly discovered facts appear to be material, and if established, constitute a meritorious defence, the appellants ought to be allowed to file an amended answer, setting forth the manner in which John Clark acquired title and the nature of his seisin. The right of a party to amend "at any time before final decree, so as to bring the merits of the case in controversy fairly to trial," is conferred in the most comprehensive terms by the *Code, Art.* 16, *sec.* 16. This right is not *ex debito*, but as decided in *Calvert vs. Carter*, 18 *Md.,* 74, depends upon the sound discretion of the Court. Yet in a case like the present, where *laches* cannot be imputed to a party, and the facts constituting the grounds of defence, have been discovered for the first time during the progress of the cause, it is equitable that the amendment provided for in the Code ought to be allowed.

The power to remand the case for that purpose is conferred on this Court by *Art.* 5, *sec.* 28. Under this section it becomes our duty to express our opinion on all points made before us, or which may be presented by the record,

so far as the same appear to us to be material for the decision of the case.

This opinion must be, in some respects, hypothetical, as we cannot with certainty anticipate the position the case may assume when the pleadings shall be amended, and additional proof furnished. These propositions may however be laid down for the government of the Court below, in the further progress and final disposition of the case.

It appears from the record that the title of the appellants was derived indirectly from the General Insurance Company, which purchased the property from Gatchell, trustee, appointed to sell the same, by a decree recovered by said company against John Clark under a mortgage, dated January 16th, 1834, in which mortgage the appellee did not unite. The title thus acquired by the General Insurance Company, was subject to the liens of the prior mortgages made by Clark, in two of which the appellee united according to law, relinquishing her dower.

These prior mortgages were subsequently paid by and assigned to the General Insurance Company, and the title thus acquired by purchase and assignment is held by the appellants.

1st. Assuming that John Clark had during the coverture, a beneficial legal seisin in fee, and that the appellee was of full age when she united in the mortgages of January 9th, 1830 and July 19th, 1831; she cannot claim dower against the mortgagees, and their assigns, except subject to such mortgages, and is bound to contribute for the payment of the mortgage debts and interest, and she is dowable of the surplus only. *Mantz vs. Buckman,* 1 *Md. Ch. Dec.,* 202; *Stewart vs. Beard,* 4 *Ib.,* 319; *Lynn vs. Gephart,* 27 *Md.,* 547; *Bank of Commerce vs. Owens,* 31 *Md.,* 320.

2nd. If under the age of 21 years at the time of the execution of those mortgages or either of them; the rights

of the appellee are in no manner bound or affected thereby ; an infant *feme covert* cannot relinquish her dower by uniting in a mortgage, but the same is void as to her.

3rd. But although the appellee was not of full age when the mortgage of January 19th, 1830 was executed, yet if the same was given to secure the purchase money, either to the party from whom the title was derived, or to a third person from whom the purchase money was obtained by the purchaser upon an agreement that such mortgage should be executed, she cannot claim dower as against the mortgagee or his assigns, her right of dower being subordinate to the lien of the mortgage, to the payment of which she is bound to contribute, and she is dowable of the surplus only. *Hobbs vs. Price,* 47 *Md.,* 360. We refer also to *Wheeler vs. Morris,* 2 *Bosworth,* 524, where this subject is considered in an able opinion by Judge WOODRUFF.

The foregoing propositions have been stated upon the assumption that John Clark had a beneficial legal *seisin* in fee during the coverture. We now proceed to consider the effect of the facts stated in the record, with respect to the original acquisition of title by John Clark, and as shown by *Exhibits X, Y, Z,* if the same be duly proved.

From these it appears that John Clark acquired a mere equitable right by his contract of purchase from the trustees *Glenn* and Winchester, of this his wife would not be entitled to dower, as he was divested thereof during his life-time; it being well settled that the wife's right to dower in the equitable estate of her husband exists only where the husband is possessed of such estate at the time his death. *Miller vs. Stump,* 3 *Gill,* 304 ; *Bowie vs. Berry,* 1 *Md. Ch. Dec.,* 452 ; *Purdy vs. Purdy,* 3 *Ib.,* 547 ; 1 *Scribner,* ch. 19, sec. 25 ; *Ibid,* ch. 20, sec. 45.

It appears that this equitable right was conveyed by Clark to the Savings Bank absolutely, from which he rented the property, and that subsequently, the purchase

money having been paid by the Savings Bank to the trustees, the latter, by a deed, in which the Savings Bank joined, conveyed the estate in fee to John Clark, who *simultaneously* executed to the Savings Bank the mortgage of January 19th 1830, to secure the payment of the purchase money. The deed and the mortgage apparently constituting one transaction.

The law in such case is thus stated by Chancellor KENT: " A transitory seisin for an instant, when the same act that gives the estate to the husband, conveys it out of him, as in the case of a conusee of a fine, is not sufficient to give the wife dower. The land must rest in the husband beneficially for his own use, and then if it be so vested, but for a moment, provided the husband be not the mere conduit for passing it, the right of dower attaches. Nor is the seisin sufficient when the husband takes a conveyance in fee, and at the same time mortgages the land back to the grantor, or to a third person to secure the purchase money in whole or in part. Dower cannot be claimed as against the rights under that mortgage." 4 *Kent*, 39 *m.* The law is stated in the same way by *Scribner, vol.* 1, *ch.* 12, *secs.* 39, 40. Where it is said: " The deed and mortgage, although in themselves separate and distinct instruments, nevertheless under the circumstances above stated are regarded as parts of the same contract. They take effect at the same time, and the giving of the deed upon the one part, and of the mortgage upon the other, is held to constitute but a single act, and to result in clothing the purchaser with the seisin for a transitory instant only. With rare exceptions, this is the established doctrine of the American Courts. Nor is it necessary that the mortgage should be made directly to the vendor. It is sufficient if it be made to a third person for his benefit. And where the mortgage is of even date with the deed, and both instruments are recorded at the same time, the mortgage although not made to the vendor, will be presumed to have

been executed for the purchase money, contemporaneously with the conveyance, and the right of dower of the wife of the mortgagor will therefore be limited to the equity of redemption." And in sec. 41, it is said: "The rule is the same where a third person advances the consideration money for the lands, and takes from the vendee, to whom they are conveyed by the vendor, a mortgage to secure the re-payment of the money thus advanced. It has been determined in the Courts of several of the States, that in cases of this description, the right of dower of the wife of the vendee is subordinate to the lien of the mortgage."

In support of this position many authorities are cited; among them is the case of *Clark vs. Monroe,* 14 *Mass.,* 351. There the land was conveyed by Andrews and wife to Clark, who by his deed dated and executed at the same time mortgaged the same land to Winthrop in fee, who furnished the consideration for the deed. The Court said: "It was decided in *Holbrook vs. Finney,* that a conveyance in fee and a re-conveyance by the grantee to the grantor in mortgage, being considered as parts of the same transaction, did not give to the grantee such a seisin as entitled his wife to have dower in the granted premises. In the case at bar, the mortgage was to a third party, but still the whole constituted but one transaction. We are not able to view the case in any light different from what it would have presented, had the mortgage of Clark been made to Andrews and wife instead of Winthrop." In that case the assignee of the mortgagee had entered and foreclosed under the mortgage, and then assigned the premises to the party in possession, and it was held that the widow of the mortgagor was not entitled to dower, the seisin of her husband having been instantaneous only. The same is the established law in Maryland. *McCauley vs. Grimes,* 2 *G. & J.,* 318; *Rawlings vs. Lowndes,* 34 *Md.,* 641, 643. We refer also to *Gammon vs. Freeman,* 31 *Maine,* 243, and *Welsh vs. Buckins,* 9 *Ohio St.,* 331.

Glenn, *et al. vs.* Clark.

It follows from these authorities that the transaction as evidence, by the "*Exhibits X, Y, Z,*" if they shall be duly established in proof, conferred upon John Clark a mere transitory seisin, which gave to his wife no right of dower as against the Savings Bank. Her right of dower would be only in the equity of redemption, and as that equitable estate was afterwards conveyed by John Clark by subsequent mortgages executed by him, and was divested by the sale under the mortgage of the General Insurance Company, so that at the time of his death he did not possess any equitable right or estate in the property, it follows that his widow would have no right of dower therein. And in this view of the case it becomes unnecessary to inquire whether the appellee was of full age when she united in the mortgage of January 19th, 1830. As her concurrence therein would be wholly unnecessary, if the seisin of her husband was merely transitory or instantaneous.

It is very clear upon the authorities that such was the nature of his *seisin,* as the same appears upon the face of the *Exhibits X, Y, Z.* The legal effect of these exhibits, and the inference to be drawn from them, is that the legal title was conveyed to John Clark only to enable him to execute the mortgage to the Savings Bank to secure the payment of the purchase money which had been furnished, or loaned to him by the Savings Bank. But this inference may be rebutted or countervailed by proof, showing that the deed and the mortgage did not, in fact, form parts of one and the same transaction. But that they were separate and independent of one another, and that consequently the seisin vested in John Clark was a beneficial seisin.

For the reasons stated, and as it appears that the substantial merits of the cause will not be determined by the reversing or affirming of the *pro forma* decree of the Circuit Court, and that the purposes of justice will be advanced by permitting further proceedings in the cause,

through an amendment of the pleadings, and the intro-
duction of further evidence; therefore, without affirming or
reversing the decree below, the cause will be remanded
for further proceedings, as provided by the Code, Art. 5,
sec. 28.

*Cause remanded.*

(Decided 21st May, 1880.)


Since the opinion was filed in this case, the solicitors
for the appellee have called the attention of the Court to
the cases of *Heuisler vs. Nickum,* 38 *Md.,* 270, and *Ahern
vs. White,* 39 *Md.,* 409, which are supposed to be in con-
flict with the views hereinbefore expressed, as to the nature
of the *seisin* of John Clark, as the same appears from *Ex-
hibits X, Y, Z.*

These cases were cited in the argument of the cause, and
have not been overlooked by the Court; but were not par-
ticularly referred to in the opinion, for the reason that the
question under consideration in this case did not arise in
them, and was not therein decided. In *Ahern vs. White,*
a lease for ninety-nine years was executed, and *simultane-
ously,* a mortgage was executed by the lessee to the lessor;
it was held that the mortgage was entitled to a priority of
lien over a judgment rendered against the lessee, before
the date of the lease and mortgage, for the reason that
the lease and the mortgage constituted one and the same
transaction. It was said by the Court that if, instead of a
lease, a deed in fee had been executed, and simultaneously
a mortgage by the grantee, the deed and mortgage con-
stituting one and the same transaction, the wife of the
grantee would not be entitled to dower. The decision
is therefore quite in accord with the foregoing opinion.

The decision of *Heuisler vs. Nickum* turned upon the
construction of the 3rd section, Art. 64, of the Code, in

Glenn, *et al. vs.* Clark.

which the term "purchase money" was held to mean the sum stipulated to be paid by the purchaser to the vendor, and did not include money that may be borrowed to complete the purchase.    This last decision rests upon the construction of the words of the Code, and has no application to the doctrine of transitory seisin.

Where a conveyance is made to a purchaser and at the same time and as part of the same transaction, the purchaser executes a mortgage to secure the purchase money, it is well settled that the seisin thus acquired by the purchaser is of such an instantaneous or transitory nature, that the dower of his widow does not attach, or in other words, her right of dower is subordinate to the right of the mortgagee.  If instead of making the mortgage directly to the vendor, it be made to a third person who furnishes the purchase money, or from whom it is borrowed by the purchaser for the purpose of paying the purchase money, the same principle of equity applies in favor of the mortgagee, provided the whole constituted one and the same transaction ; and in such case the rights of the mortgagee are paramount to the right of dower of the wife of the purchaser.